WICKER, J.
Defendants-Appellants, St. Charles Parish and V.J. St. Pierre, Jr., in his capacity as President of St. Charles Parish (hereinafter collectively referred to as “the Parish”), appeal the granting of a petition for writ of mandamus ordering the Parish to pay Wallace Drennan, Inc. (hereinafter referred to as “Drennan”), $100,000.00, and further ordering the Parish to pay Drennan $2,000.00 in attorney’s fees. Drennan has answered the appeal requesting additional attorney’s fees incurred in opposing this appeal. For the following reasons, we affirm the ruling of the trial court, grant Drennan’s request for additional attorney’s fees, and award $2,500.00 in additional attorney’s fees incurred by Drennan in defending this appeal.
FACTUAL AND PROCEDURAL HISTORY
This case arises out of work performed pursuant to a public contract between Drennan and the Parish under which Drennan replaced existing metal culverts on Canal #10 in St. Charles Parish. This appeal stems from the trial court’s grant of Drennan’s third petition for writ of mandamus. Drennan’s first petition for writ of mandamus was dismissed pursuant to an exception of no cause of action filed by the Parish. Drennan appealed the trial court’s grant of the exception of no cause of action and this Court set forth the factual and procedural history leading up to the first petition for writ of mandamus as follows:
Following a bid process, the Parish determined Drennan to be the lowest bidder and Drennan commenced work on the project. The contract provided for a procedure whereby an engineer would have to approve each application for payment submitted by Drennan prior to disbursing payment.
The Petition for Writ of Mandamus asserts that the first eight of these applications were approved. It further asserts that Drennan submitted its ninth application for payment and, again, the engineer approved the application. However, the Parish refused to pay the amount submitted in Drennan’s ninth application. The petition further alleges that the Parish has not disputed that it owes the payment for the ninth application. However, the petition states that the Parish refused to pay the amount due in the ninth application because the Parish contends that it overpaid Dren-nan in its previous applications for payments.
In July of 2012, Drennan requested a Certificate of Substantial Completion, which was issued in March of 2013. Drennan recorded the certificate and the Parish thereafter made two partial payments to Drennan. However, the petition alleges that the Parish still owes Drennan $286,575.95[1] for work completed pursuant to the contract.
After Drennan’s amicable demand for payment was refused, Drennan filed a Petition for Writ of Mandamus pursuant to La. R.S. 38:2191(D) to compel the Parish to pay the full amount owed under the contract. The Parish filed an Exception of No Cause of Action, asserting that Drennan does not have a cause of action in mandamus. The Parish argued that, under La. C.C.P. 3862, mandamus is not an appropriate remedy in this case because Drennan has the ability to pursue the relief requested through an ordinary proceeding. The trial court, relying on general mandate [sic] principles, granted the Parish’s exception of no cause of action. The trial *539 court found that Drennan has the ability to pursue the relief requested through other forms of proceedings and found that Drennan is not entitled to a mandamus proceeding. The instant appeal followed.
Wallace C. Drennan, Inc. v. St. Charles Parish, 14-89 (La.App. 5 Cir. 8/28/14), 164 So.3d 186, 188-89.
This Court reversed the trial court’s grant of the exception of no cause of action, finding that Drennan’s petition “sufficiently state[d] a cause of action for payments due pursuant to its contract with the Parish and that La. R.S. 38:2191(D) specifically provides that such disputes ‘shall be subject to mandamus ....’” Wallace C. Drennan, Inc., 164 So.3d at 190. This Court also found that the trial court’s reliance on the general principles of mandamus was misplaced as the availability of relief by ordinary proceedings did not' preclude an action for mandamus under La. R.S. 38:2191. Id.
On September 29, 2015, Drennan filed its third petition for writ of mandamus.[2] The petition again,asserted that the Parish failed to pay Drennan $100,000.00 of the amount sought in Drennan’s ninth application for payment and that, pursuant to La. R.S. 38:2191(D), Drennan was entitled to mandamus relief in that amount,
On October 12, 2015, the Parish filed peremptory exceptions of res judicata, no cause of action, and no right of action. Counsel for all parties waived delays, and Judge Timothy Marcel heard the Parish’s exceptions on October 13, 2015. At the conclusion of the hearing on the exceptions, the trial court denied the Parish’s exceptions of no cause of action, no right of action, and res judicata.
The court proceeded with a hearing on the merits of Drennan’s petition. During the hearings, portions of the contract between Drennan and the Parish, all nine of Drennan’s applications for payment, various letters among the parties and counsel for each party, and the deposition transcript of consulting project engineer Mohammad Saleh were admitted as evidence.
The contract excerpts in the record include several ostensibly competing provisions upon which the parties relied throughout the proceedings. Paragraph 9.10, captioned “Determination for Unit Prices,” provides:
ENGINEER will determine the actual quantities and classifications of Unit Price work performed, by CONTRACTOR. ENGINEER will review with CONTRACTOR ENGINEER’S preliminary determinations on such matters before rendering a written decision thereon (by recommendation of an Application for Payment or otherwise). ENGINEER’S written decisions thereon will be final and binding upon OWNER and CONTRACTOR, unless, within ten days after the date of any such decision, either OWNER or CONTRACTOR delivers to the other party to the Agreement and to ENGINEER written notice to appeal from such a decision.
Further, paragraph 14.4, captioned “Review of Applications for Progress Payment,” provides:
ENGINEER will, within ten days after receipt of each Application for Payment, either indicate in writing a recommendation of payment and present the Application to OWNER, or return the Application to CONTRACTOR indicating in writing ENGINEER’S reasons for refusing to recommend payment. In the latter case, CONTRACTOR may make *540 the necessary corrections and resubmit the Application. Ten days after presentation of the Application for Payment with ENGINEER’S recommendation, the amount recommended will |4(subject to the provisions of the last sentence of paragraph 14.7) become due and when due will be paid by OWNER to CONTRACTOR.
Lastly, paragraph 14.7 provides:
ENGINEER may refuse to recommend the whole or any part of any payment if, in ENGINEER’S opinion it would be incorrect to make such representations to OWNER. ENGINEER may also refuse to recommend any such payment, or, because of subsequently discovered evidence or the results of subsequent inspections or tests, nullify any such payment previously recommended, to such extent as may be necessary in ENGINEER’S opinion to protect OWNER from loss because:
[[Image here]]
14,7.4 of ENGINEER’S actual knowledge of the occurrence of any of the events enumerated in paragraphs 15.2.1 through 15.2.9[3] inclusive. OWNER may refuse to make payment of the full amount recommended by ENGINEER because claims have been made against OWNER on account of CONTRACTOR’S performance or furnishing of the Work or Liens have been filed in connection with the Work or there are oth.er items entitling OWNER to a set off against the amount recommended, but OWNER must give CONTRACTOR immediate written notice (with a copy to ENGINEER) stating the reasons for such action.
During the hearings, Drennan’s President, Wallace C. Drennan, III, testified to the usual procedure the parties followed in submitting monthly applications for payment.[4] According to Mr. Drennan, generally Drennan’s project manager, Rick Schliegelmeyer, would meet with an on-site inspector toward the end of the month to review Drennan’s draft of a pay estimate and obtain agreement on the quantities listed within the pay estimate. Dren-nan would then submit a final draft of the pay estimate, after which Mohammad Sa-leh would notify Drennan by telephone that the pay estimate was acceptable and direct Drennan to submit six copies of the form, signed by Drennan and notarized, for Mr. Saleh’s approval to send to the Parish for payment approval.
Mr. Drennan testified that this procedure occurred,in each of the first eight applications Drennan submitted. Mr. Drennan further testified that when he submitted the ninth application for payment requesting payment of $138,747.50, Mr. Saleh certified his recommendation of full payment with his signature on August 13, 2012, and forwarded the recommendation to the Parish for payment. However, Drennan’s counsel introduced another copy of Drennan’s ninth application for payment requesting $138,747.50, whereupon Mr. Sa-leh’s signature appeared but the requested amount was struck through and reduced by $100,000.00.
During his deposition testimony, Mr. Sa-leh testified that he originally approved *541 'Drennan’s fifth, sixth, seventh, and eighth applications for payment, despite each containing the disputed line items within the attached invoice billing the Parish for $25,000.00 of work described as “Relocation of Infrastructure.” Mr. Saleh testified that he originally approved Drennan’s ninth application for payment, which included no disputed invoice items, but he subsequently reversed his decision after being notified by the Parish’s accounting department that the Parish had erroneously paid Drennan a total of $100,000.00 for “Relocation of Infrastructure” over the course of the prior four applications for payment. Mr. Saleh testified that under Section 10100[5] of the contract, titled “Relocation of Infrastructure Items,” the Parish was not responsible for payment of costs associated with relocation of infrastructure, because Drennan had not received the required authorization to perform the invoiced work and Drennan failed to notify Mr. Saleh or the Parish prior to performing the work. In Mr. Saleh’s view, he was authorized by Paragraph 14.7 of the contract to rescind his original approval of the application for payment due to his subsequent discovery that Drennan had failed to perform the work in accordance with the contract. Mr. Saleh further testified that, | Sdespite sitting for three depositions regarding this litigation, he could not recall whether Drennan was entitled to be paid for those invoiced items included in its ninth application for payment. Nor could Mr. Saleh recall when the Parish notified him of its dispute regarding the charges on the earlier applications or whether there was any written notification of the dispute submitted to Drennan.
The court also heard the testimony of Sam Scholle, Director of Public Works and Wastewater for St. Charles Parish and the officer responsible for oversight of the contract with Drennan. Mr. Scholle echoed Mr. Saleh’s testimony, testifying that he was neither notified of Drennan’s relocation of infrastructure work nor did he receive any estimates of the labor or material costs of such work. Mr. Scholle further testified that, like Mr. Saleh, he too signed the fifth, sixth, seventh, and eighth payment applications on behalf of the Parish unaware that the applications contained the disputed line items. However, he was notified of the issue by the Parish accounting department prior to his approval of the ninth application for payment and discussed the problem with Mr. Saleh, who admitted his earlier mistake. Mr. Scholle opined that the earlier overpayments gave Mr. Saleh the right to reverse his recommendation as to the ninth payment application and that Mr. Scholle commonly withheld payment on similar contracts if there was a question as to whether the application should be paid. Mr. Scholle could not recall whether the Parish delivered any written notice of its dispute with the payment application. However, he testified that he did not author such a notice nor had he ever seen one, and he was aware that the Parish accounting department notified Drennan’s accounting department and Mr. Saleh that the payment was reduced.
*542 At the conclusion of the hearing, the trial judge took the matter under advisement and, on November 13, 2015, signed a written judgment and incorporated reasons making Drennan’s alternative writ of mandamus peremptory and permanent and ordering St. Charles Parish, through its President, V.J. St. Pierre, Jr., to pay Drennan $100,000.00, and further ordering that St. Charles Parish pay Drennan $2,000.00 in attorney’s fees pursuant to La. R.S. 38:2191(B). In his written reasons, the trial judge found that the contract clearly provided that progressive stage payments became due on the eleventh day following approval and certification by the project engineer if neither party filed a written objection thereto within the previous ten days. The court reasoned that there was no dispute that Mr. Saleh, the project engineer, approved Drennan’s ninth application for payment and submitted his recommendation to St. Charles Parish for payment and that the record wás devoid of any written appeals or objections to quantity or quality of the work described in Drennan’s ninth application for payment. The court further found that on March 21, 2013, the certificate of substantial completion was filed in the public record, certifying that Drennan’s conduct relative to all work items was in compliance with the contract plans and specifications. Accordingly, the trial judge concluded that the total amount requested in Drennan’s ninth application for payment was due and payable and that the Parish’s unliquidated set-off claims for the allegedly erroneous payment in prior payment applications were not a defense for nonpayment of the Parish’s liquidated obligation to pay the total amount owed under the ninth payment application.
On November 24, 2015, the Parish file,d a motion for new trial arguing that, inter alia, the trial court erred in failing to consider paragraph 14.7 in its determination of the parties’ contractual rights and duties, the trial court erred in failing to consider the testimony of Mr. Saleh, the trial court erred in failing to read La. R.S. 38:2191 in pari materia with La. C.C.P. arts. 3861-3865 governing general mandamus proceedings, and the trial court erred in granting a writ of mandamus against V.J. St. Pierre, Jr., rather than naming only St. Charles Parish in the judgment.
After a hearing on the motion for new trial, the trial judge issued a written order denying the motion and incorporated reasons therefor. In his written reasons for denial, Judge Marcel reasoned that the court “reviewed the [cjontract in its entirety and, based on the evidence presented, determined the provisions contained in Section 14.7 inapplicable to the instant matter.” Judge Marcel also found that the judgment adhered to the general mandamus articles, and that there was no authority to suggest that the parish president was not a proper party defendant in a mandamus action under La. R.S. 38:2191. Finally, regarding the testimony of Mohammad Saleh, Judge Marcel explicitly stated that “the entire deposition transcript was admitted into evidence, read, and considered in rendering judgment,” that the court rejected Mr. Saleh’s interpretations of the contract and, due to internal inconsistencies and contradictions with other evidence, found his testimony lacking reliability to establish the facts argued by St. Charles Parish.
The Parish filed a timely motion appeal, which Drennan answered, requesting additional attorney’s fees incurred in opposing the appeal.[6]
*543 LAW AND ANALYSIS
In its first assignment of error the Parish argues that the trial court erred when it failed to consider the general mandamus articles of La. C.C.P. arts. 3861-3865 in pari materia with La. R.S. 38:2191 to find that the Parish’s duty to pay Drennan was discretionary due to the Parish’s alleged “reasonable cause” to withhold payment.
Because this assignment presents questions of law regarding statutory and contractual interpretation, we apply a de novo standard of review to those issues. Newman Marchive Partnership, Inc. v. City of Shreveport, 07-1890 (La. 4/8/08), 979 So.2d 1262, 1265.
 We begin our interpretation of the applicable statutory provisions with a discussion of the well-established rules of statutory construction pertinent to the cáse at bar. In accord with these rules, the interpretation of any statutory provision starts with the language of the statute itself. Faget v. Faget, 10-188 (La. 11/30/10), 53 So.3d 414, 420. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. La. C.C. art. 9; La. R.S. 1:4. Words and phrases shall be read with then. context and shall be construed according to the common and approved usage of the language. La. R.S. 1:3. The word “shall” is mandatory and the word “may” is permissive. Id. Moreover, “[l]aws on the same subject matter must be interpreted in reference to each other.” La. C.C. art. 13. Where two statutes deal with the same subject matter, they should be harmonized if possible, as it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws. LeBreton v. Rabito, 97-2221 (La. 7/8/98), 714 So.2d 1226, 1229. However, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. Id.
The general mandamus articles of the Louisiana Code of Civil Procedure define mandamus as “a writ directing a public officer or a corporation or an officer thereof to perform any of the duties set forth in Articles 3863 and 3864.” La. C.C.P. art. 3861. A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, or to a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor. La. C.C.P. art. 3863. A ministerial duty is “a simple, definite duty arising under conditions admitted or proved to exist, and imposed by law.” Hoag v. State, 04-857 (La. 12/1/04), 889 So.2d 1019, 1024. The critical element necessary for the issuance of mandamus is that “the public official to whom the writ is directed may exercise no element of discretion when complying.” Id. If a public officer is vested with any element of discretion, mandamus will not lie. Id.
Payments for public contracts are governed by Louisiana Revised Statutes Title 38, Chapter 10. Specifically, La. R.S. 38:2191 provides:
A. All public entities shall promptly pay all obligations arising under public contracts when the obligations become due and payable under the contract. All progressive stage payments and final pay *544 ments shall be paid when they respectively become due and payable under the contract.
B. Any public entity failing to make any progressive stage payment within forty-five days following receipt of a certified request for payment by the public entity without reasonable cause shall be liable for reasonable attorney fees; Any public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney fees.
C. The provisions of this Section shall not be subject to waiver by contract.
D. Any public entity failing to make any progressive stage payments arbitrarily or without reasonable cause, or any final payment when due as provided in this Section, shall be subject to mandamus to compel the payment of the sums due under the contract up to the amount of the appropriation made for the award and execution of the contract, including any authorized change orders.
Pursuant to La. R.S. S8:2191(A), all contracting public entities “shall” pay all obligations, progressive stage payments, and final payments when they become due and payable under the contract. The use of the word “shall” in this provision unequivocally expresses a public entity’s mandatory duty to fulfill its contractual obligations as they become due. Should a public entity fail to fulfill its mandatory duty under La. R.S. 38:2191(A), subsection D, again employing the mandatory “shall,” subjects the public entity to mandamus to compel payment of the sums due. under the contract.
However, subsection D authorizes mandamus relief against public entities failing to make progressive stage payments when the non-payment is “arbitrary] or without reasonable cause,” but provides no further guidance as to what conditions qualify as arbitrary or unreasonable cause. The Parish argues that an in pari materia reading of La. R.S. 38:2191 with the general mandamus articles of the Code of Civil Procedure demonstrates that a public entity is not subject to mandamus compelling payment of a progressive stage payment when the terms of the contract give the public entity discretion as to whether payment is due and payable. We do not disagree. Construing the legislative authorization of a mandamus action under La. R.S. 38:2191(D) with the pre-existing general mandamus articles in La. C.C.P. arts. 3861, et seq., so as to harmonize and reconcile those provisions, we find that mandamus relief under La. R.S. 38:2191 is available only when there is no discretion left to the public entity as to whether payment is due and. payable under the terms of the contract and, conversely, that “reasonable cause” for nonpayment exists when the terms of the contract do not mandate payment under the circumstances of the particular case. However, we do not find that the circumstances of this case leave any discretion to the Parish as to whether the full amount of Drennan’s ninth payment application is presently due and payable.
The payments in dispute here do not relate to any charges within Drennan’s ninth application for payment; rather, the Parish contests the billing of line items in prior applications which were recommended for payment by the project engineer. The disputed work clearly falls within paragraph 9.10 of the contract regarding the determination by the engineer of “actual quantities and classifications of Unit Price Work performed” by Drennan. Absent written notice of a party’s intent to appeal from the engineer’s recommendation within ten days, the en *545 gineer’s written recommendations for payment of the line items included in the payment applications become final and binding. Here, the record is devoid of any timely written notice of the Parish’s dispute with charged line items. Therefore, Mr. Saleh’s written recommendations on Drennan’s fifth, sixth, seventh, and eighth payment applications were final and binding on the Parish, and in accordance with the contract, the Parish paid timely. Similarly, Mr. Saleh presented to the Parish a written recommendation of full payment on Drennan’s ninth application, and there is no evidence in the record of a timely written objection from the Parish, rendering Mr. Saleh’s recommendation final and binding on all parties.
Nevertheless, the Parish argues that paragraph 14.7 entitled Mr. Saleh to rescind his recommendation of the ninth payment application and the Parish to withhold full payment of the requested amount. We find that the Parish’s reliance on paragraph 14.7 is misplaced. Paragraph 14.4 of the contract provides that ten days after presentation of the application for payment with the engineer’s recommendation, “the amount recommended (subject to the provisions of the last sentence of paragraph 14.7) become due and when due will be paid by OWNER to CONTRACTOR.” While paragraph 14.7 permits the engineer to nullify payments previously recommended, the grounds for nullification relate to defective work within the recommended application for payment being nullified or to defective performance by the contractor of the work charged under the nullified application. Here, the Parish has voiced no qualms with the work invoiced by Drennan in its ninth application for payment and Mr. Saleh could not identify any defect in that work, thus Mr. Saleh was not authorized by paragraph 14.7 to nullify his previous- recommendation for full payment of Drennan’s application.
Moreover, the final sentence of paragraph 14.7 permits the Parish to refuse to make payment of the full amount recommended by the engineer because “there are other items' entitling OWNER to a set off against the amount recommended, but OWNER' must give CONTRACTOR immediate written notice (with a copy "to ENGINEER) stating the reasons for such action.” However, there is no evidence in the record that the Parish gave Drennan or Mr. Saleh written notice of its entitlement to set-off claims resulting from erroneously. paid line items in prior Inpayment applications. Therefore, the Parish was not entitled to withhold payment of the full amount. Under the terms of paragraph 14.4 of the contract, upon expiration of ten days after Mr. Saleh presented his recommendation of full payment on Drennan’s ninth application for payment without written objection from the Parish, the full amount became due and payable. Accordingly, under La. R.S. 38:2191(A), the Parish had a ministerial duty to promptly pay the full amount of Drennan’s ninth payment application and, under La. R.S. 38:2191(D), is subject to mandamus to compel payment of the full amount;[7]
We do not attempt to opine by way of this opinion on the merits of the Parish’s potential claims for set off resulting from the allegedly erroneous payments to Dren-nan, which encompass an entirely separate proceeding. Nor does our interpretation of La. R.S. 38:2191 preclude a public entity from asserting potential set off claims as *546 reasonable cause for withholding payment on a public contract in every circumstance. The paramount issue in an action for mandamus under La. R.S. 38:2191 is whether payment is due and payable under the terms of the public contract. Had the Parish given timely written notice of its set off claims per the terms of paragraph 14.7 of the contract, the Parish may have had reasonable cause to withhold payment. Absent evidence of any such objection, the Parish is bound by the terms of its contract and subject to mandamus to compel payment of the sum due.
In its second and third assignments of error, the Parish argues that the trial court erred in rejecting the deposition testimony of project engineer Mo Saleh and his rationale for withholding payment under the contract and in finding his testimony unreliable.
Contrary to the Parish’s allegations, the record reflects that the entirety of Mr. Saleh’s deposition testimony was admitted into evidence. Moreover, in his reasons for judgment, the trial judge explicitly referred to Mr. Saleh’s deposition testimony, and in his incorporated reasons for denial of the Parish’s motion for new trial, the trial judge wrote:
The entire deposition transcript was admitted into evidence, read, and considered in rendering judgment. In reading the transcript, the Court rejected the opinion testimony of Mr. Saleh’s interpretation of the rights and obligations under the Contract, specifically his misplaced reliance on Section 14.7. Mr. Sa-leh’s fact testimony contained several internal inconsistencies and was also contradicted by evidence of his actions contemporaneous with the operative facts to this controversy. For those reasons, the Court found Mr. Saleh’s testimony lacked reliability for establishing the facts argued by St. Charles Parish.
Our review of Mr. Saleh’s deposition transcript reveals that the majority of his testimony essentially amounted to a legal argument identical to the Parish’s theory of defense to Drennan’s petition for writ of mandamus. Having already dismissed the Parish’s interpretation of the rights and duties conferred by the contract, we find no error in the trial court’s rejection of Mr. Saleh’s opinion testimony asserting the same.
Turning to the reliability of Mr. Saleh’s factual testimony, the factual findings of a trial court are not disturbed unless manifestly erroneous. Lachney v. Fertitta Excavating Contr. Inc., 07-885 (La. App. 5 Cir. 4/15/08), 984 So.2d 887, 892. To reverse a fact-finder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong. Skillman v. Riverside Baptist Church of Jefferson Parish, 14-727 (La. App. 5 Cir. 05/28/15), 171 So.3d 407, 415. We are aware that Mr. Saleh’s testimony was taken by deposition. Nevertheless, the Louisiana Supreme Court has ruled that the manifest error standard of review is applicable even to deposition testimony. Lachney, 984 So.2d at 892 (citing Virgil v. Am. Guaranteed and Liab. Ins. Co., 507 So.2d 825 (La.1987)).
Upon review of the entirety of Mr. Sa-leh’s deposition testimony, we find a reasonable basis for the trial court’s factual findings. Mr. Saleh’s hostility to opposing counsel is apparent throughout his deposition testimony, requiring counsel for Dren-nan to repeat the same basic questions numerous times without receiving a clear answer. Mr. Saleh also repeatedly claimed he was unable to recall certain events, significant to the underlying project, in *547 which the record reflects he was a participant. Taken as a whole, there was a reasonable basis for the trial judge to find Mr.. Saleh’s deposition testimony unreliable. Accordingly, we find no manifést error in the trial judge’s finding.
In its fourth assignment of error, the Parish argues that the trial judge erred when he opined in his written reasons for denial of the Parish’s motion for new trial that he had read the contract in its entirety. The Parish asserts that only excerpts of the contract were admitted as evidence, preventing the trial judge from reading the entire contract, and that the portions of the contract which were admitted provided a basis to deny Drennan’s petition for mandamus.
In his incorporated reasons for denial of the Parish’s motion for new trial, the trial judge wrote, “This Court reviewed the Contract in its entirety and, based on the evidence presented, determined the provisions contained in Section 14.7 inapplicable to instant matter.” When read in the proper context of the entire sentence, it is clear that the trial judge intended to convey that he had read the entirety of the “evidence presented,” which included all relevant portions of the contract necessary for his decision. Moreover, the trial judge’s detailed written reasons for judgment and incorporated reasons for denial of the Parish’s motion for new trial amply demonstrate that he reviewed the entirety of the evidence prior to issuing his rulings.
Regardless of this reasonable gaffe, the trial court’s written reasons for judgment form no part of the judgment, and appellate courts review judgments, not reasons for judgment. Bellard v. Am. Cent. Ins. Co., 07-1335 (La. 4/18/08), 980 So.2d 654, 671; La. C.C.P. art. 1918. Having reviewed the trial court’s judgment and finding no error in the grant of Drennan’s petition for mandamus; we find no merit in this assignment of error.
In its final assignment of error, the Parish argues that the trial court erred in rendering judgment against the parish president, rather than rendering judgment against St. Charles Parish alone. The Parish asserts that La. R.S. 38:2191(D) authorizes a writ of mandamus against a “public entity,” but not the officer in charge of the public entity.
The Parish is correct in noting that La. R.S. 38:2191 makes no mention of public officers. However, La. R.S. 38:2211, which provides definitions of terms found within the chapter containing La. R.S. 38:2191, defines a “public entity” as encompassing “any public officer whether or not an officer of a public corporation or political subdivision.” Moreover, La. C.C.P. art. 3861 defines mandamus as “a writ directing a public officer ... to perform duties set forth in [La.' C.C.P. arts.] 3863 and 3864.” (emphasis added).
In its petition Drennan named Y.J. St. Pierre, jr., in his capacity as president of St. Charles Parish. Similarly, the judgment at issue ordered payment by “St. Charles Parish, through its President, V.J. St. Pierre, Jr,” and Drennan substituted the current parish president, Larry Cochran, as defendant upon his succession to the office. The law clearly provides for a public officer to be the subject of a writ of mandamus and here the St. Charles Parish President is unambiguously named as a defendant in his official, rather than his personal, capacity. Accordingly, we find no error in the trial court’s judgment rendered against both the Parish of St. Charles and its President.
Attorney’s Fees on Appeal
Drennan answered this appeal requesting additional attorney’s fees incurred in answering and defending this appeal.
*548 Generally, an increase in attorney fees should be awarded when a party who was awarded attorney’s fees in, the trial court is forced to and successfully defends an appeal. Gibson & Assocs. v. State, 13-2069 (La. App. 1 Cir. 9/24/14), 155 So.3d 39, 46; See also Sicard v. Touro Infirmary, 13-544 (La. App. 5 Cir. 12/19/13), 131 So.3d 989, 996. The appeal filed herein by the Parish necessitated additional work for Drennan’s attorney, entitling Drennan to an increase in the award of reasonable attorney’s fees permitted by La. R.S. 38:2191(B). Considering that Drennan’s attorney had to conduct additional legal research, prepare a brief, and orally argue the case before this Court, we find an additional award of $2,500.00 to be a reasonable fee.
CONCLUSION
For the foregoing reasons, we find no error in the trial court’s grant of Dren-nan’s petition for writ of mandamus and affirm the trial court’s judgment. We further grant Drennan’s answer to the appeal and award additional attorney’s fees in the amount of $2,500.00.
JUDGMENT AFFIRMED AND ATTORNEY’S FEES AWARDED

. Pursuant to a subsequent partial settlement agreement and joint partial motion to dismiss filed by the parties, the remaining amount in dispute is $100,000.00 and attorney’s fees.

. Drennan voluntarily dismissed its second petition for writ of mandamus without prejudice pursuant to the parties’ partial settlement agreement.

. Paragraph 15.2.9 provides: "[Owner may terminate] if Contractor otherwise violates in any substantial way any provisions of the Contract Documents[.]”

. Mr. Drennan testified during the hearing on the Parish's exceptions and the subsequent hearing on the merits of Drennan’s petition. Because his earlier testimony was incorporated for purposes of the hearing on the merits of Drennan’s petition, we make no distinction as to the purposes for which Mr. Drennan’s testimony was offered.

. Section 10100, introduced at the hearing on Drennan’s petition, provides that “[t]he cost for relocating, repairing, replacing or removing any unforeseen utilities or structures (such as water, sewer, gas, power, drainage, subsurface obstructions or damage) that are in conflict with the items to be installed under this project, shall be paid under item ‘Relocation of Infrastructure' Items’ of bid form.” The provision requires that the work shall be paid for only when authorized and deemed necessary by the engineer and the Parish and that, prior to performing the work, the contractor shall submit an estimated cost for labor, equipment, and materials.

. Prior to the filing of the Parish’s motion for appeal, Drennan filed an ex parte motion to substitute V.J. St. Pierre, Jr„ in his capacity as St. Charles Parish President, with his sue- *543 cessor, Larry Cochran, in his capacity as the current President of St. Charles Parish. The record contains no ruling on Drennan’s ex parte motion to substitute, but the Parish’s motion for appeal names “Larry Cochran (having been substituted for V.J. St. Pierre)” as a defendant.

. While the parties have not raised the issue, for the sake of a thorough review, we note that the record shows that the amount subject to mandamus does not exceed the amount of the appropriation made for the award and execution of the contract, in accordance with La. R.S. 38:2191(D).