STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0272

LA CONTRACTING ENTERPRISE, LLC

VERSUS

SOUTH LAFOURCHE LEVEE DISTRICT
AND KEITH GUIDRY, IN HIS CAPACITY AS PRESIDENT OF
SOUTH LAFOURCHE LEVEE DISTRICT

Judgment Rendered: ___DEC 2 0 2024___

Appealed from the
17th Judicial District Court
In and for the Parish of Lafourche
State of Louisiana
Docket No. 148539

The Honorable Marla M. Abel, Judge Presiding

Loretta G. Mince                Counsel for Plaintiff/Appellant,
New Orleans, Louisiana          LA Contracting Enterprise, LLC

Ryan P. Collins                 Counsel for Defendants/Appellees,
Ray A. Collins                  South Lafourche Levee District and
Larose, Louisiana               Keith Guidry, in his capacity as
                                President of the South Lafourche
                                Levee District

BEFORE:  WOLFE, MILLER, AND GREENE, JJ.

**MILLER, J.**

This matter is before us on appeal by plaintiff, LA Contracting Enterprise, LLC, from a judgment of the trial court denying its petition for writ of mandamus seeking to compel defendants, the South Lafourche Levee District and its President, Keith Guidry, to pay funds allegedly due under a public works contract. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Upon acceptance of its successful bid, on November 28, 2022, LA Contracting Enterprise, LLC, ("LA Contracting") and the South Lafourche Levee District ("the Levee District") entered into a public works contract for the Levee District's D-North Ramp Project ("the project") for the base bid amount of $692,710.00. Pursuant to the contract, LA Contracting, "the Contractor," was to complete all work, which included providing all equipment, labor, and material necessary for the construction of proposed repairs to the flood wall, elevation of the current roadway ramp over the levee at Loop Road to +16' NAVD 88, and all civil site work noted on the drawings. The project was designed by GIS Engineering, LLC, who was tasked with the duties and responsibilities assigned to "the Engineer" in connection with completion of the work in accordance with the contract. The Engineer's duties included processing applications for payment by the Contractor for approval and recommendation for payment by the Levee District, "the Owner."

Work on the project commenced in February of 2023. On March 1, 2023 and March 31, 2023, LA Contracting submitted its first and second payment applications for the amounts of $38,950.00 and $28,357.50 (less retainage) respectively, which were approved by the Engineer, and paid by the Levee District. Thereafter, a dispute arose as to whether the plans and specifications required use of material stockpiled by the Levee District onsite or whether the contract provided

2

LA Contracting the option to utilize material from certain borrow pits in excess of the volumes stated in the bid form for "excavation" to meet its requirements for placement of the "embankment" material. Simply stated, the parties disputed where the material was to be taken from, how much would be taken, and how the material would be categorized under the contract.

Following a meeting with all parties, the Levee District issued a letter on May 25, 2023, to Jeremy Landry, the owner of LA Contracting, explaining that LA Contracting's opinion that "it has the option to utilize material from an off-site borrow source in excess of the volumes stated in the bid form for Excavation to meet its requirements for placement of the Embankment material" triggers a change in the contract costs in excess of the $250,000.00 change order limit currently allowed under the Public Bid Law. The Levee District thus advised LA Contracting that it had voted to terminate the contract for convenience pursuant to Section I, Article 15.4 of the General Conditions of the contract.[1] The termination was effective as of the date of the letter, May 25, 2023, and LA Contracting's equipment was to be "demobilized" within seven days of the letter.

Section I, Article 15.4 provides in part:

15.4 TERMINATION FOR CONVENIENCE: Upon seven days' written notice to CONTRACTOR and ENGINEER, OWNER may, without cause and without prejudice to any other right or remedy, elect to abandon the Work and terminate the Agreement.

15.4.1 In any termination for convenience, CONTRACTOR shall be paid for (a) Work completed, in accordance with the Contract Documents, before receipt of the notice of termination, and (b) reasonable termination settlement costs for commitments that have become firm before the termination. CONTRACTOR shall not be paid any anticipated and unrealized supplemental costs, administrative expenses and profit for uncompleted Work. If no agreement can be reached as to reasonable termination costs, OWNER and CONTRACTOR shall follow the provisions in federal regulation FAR 52.249-2 found in 48 CFR Part 52.

---

[1] The Levee District held a special meeting on May 25, 2023, where it voted to terminate the contract with LA Contracting.

3

After the contract was terminated, in accordance with Article 15.4.1, on June 2, 2023, LA Contracting submitted its third application for payment in the amount of $285,569.43 accompanied with a cover letter explaining that it was seeking payment for what it understood to be an undisputed amount due for work performed. It further provided notice that it intended to appeal any decision by the Engineer or the Levee District that denied payment for all work performed and that it intended to seek all costs and damages incurred through the date of termination of the contract, including all excavation work performed and all standby time incurred. After review of the application, the Engineer determined that it required amendment and resubmission and returned it to LA Contracting to implement its suggested corrections. On June 7, 2023, LA Contracting amended and resubmitted the payment application as to the undisputed amounts owed under the contract. In doing so, LA Contracting expressly reserved its right to pursue payment of all additional monies owed for work completed under the contract, including but not limited to amounts included in previously submitted pay applications and amounts due based on the final surveys for the project. It further reiterated its intention to appeal any decision denying payment for the amounts it had previously submitted. The amended third pay application for the amount of $152,920.93 was approved by the Engineer and paid by the Levee District.

On July 27, 2023, LA Contracting submitted its fourth and final application for payment in the amount of $583,893.88.[2] After review of the application, the Engineer instructed LA Contracting to amend and resubmit the application in accordance with its comments. By letter dated August 14, 2023, LA Contracting informed the Engineer that it was submitting a revised application and that it was also prepared to execute a change order to reduce the quantity of Bid Item 203-02 from 2,919 to 2,896 cubic yards. LA Contracting further advised that it was due

---

[2]This requested amount, when added to the payments received totals more than $800,000.00 – well above the original base bid amount.

4

full payment for all excavation work completed totaling 12,093 cubic yards pursuant to Section 203 of the contract concerning excavation, despite the Engineer's position that only 2,896 cubic yards would be approved. LA Contracting noted that Section 11.3.2 of the contract allowed for adjustment of the contract price, which was supported by the survey documentation previously provided showing total excavation of 12,093 cubic yards. LA Contracting thus sought full payment for this amount and additional sums for Bid Items 713-01 - temporary signs and barricades, 740-01 - construction layout, and 740-02 - utility oversight and coordination.

By letter dated September 7, 2023, the Engineer advised LA Contracting that, after review of its fourth payment application, the Engineer would approve and recommend a total payment amount of $440,322.00 for the terminated project, which included payment for 7,523 cubic yards of embankment utilizing the stockpiled material onsite and 2,896 cubic yards of excavation utilizing material from the offsite pit. Th Engineer prepared a fourth change order reflecting these changes. LA Contracting did not consent to the proposed fourth change order because GIS refused to recommend payment for all work completed, maintaining its position that it would only approve payment for 2,896 cubic yards of excavation, 80% for all signs, barricades, and construction layout, and 65% for utility oversight.

On September 22, 2023, LA Contracting filed a suit for mandamus pursuant to the Louisiana Public Works Act seeking funds "due and owing" under the contract, as well as an award of attorney's fees and interest pursuant to La. R.S. 38:2191. LA Contracting contended that the Levee District refused to compensate it for the full amount due for all work completed prior to the termination of the contract. First, LA Contracting contended that of the total 12,093.09 cubic yards excavated on site, the Levee District paid for 2,896 cubic yards, but refused to pay

5

for the remaining 9,197.09 cubic yards excavated, amounting to $423,066.14. Secondly, LA Contracting contended that the Levee District refused to provide full payment of $11,450.00 for three lump sum bid items (temporary signs and barricades, construction layout, and utility oversight and coordination) although all work was completed.

The matter was heard before the trial court on October 18, 2023. At the conclusion of the hearing, the trial court allowed the parties to submit post-trial briefs. On January 12, 2024, the trial court signed a judgment denying LA Contracting's petition for writ of mandamus. The judgment of the trial court was accompanied by written reasons wherein it determined that the Levee District's decision to not pay the full amount of the fourth application for payment was not arbitrary or without reasonable cause, but, instead, was based on the recommendation of the Project Engineer. The trial court further determined that this dispute resulted from a disagreement between the parties as to the contract's interpretation. Thus, the trial court concluded that mandamus relief was not available.

LA Contracting filed the instant appeal contending that the trial court erred in: (1) determining that mandamus relief was not available because the Levee District disputes the amounts claimed; and (2) denying its petition for mandamus where the evidence presented at trial demonstrated that it was entitled to the amounts claimed under the contract.

## DISCUSSION

The denial of a request for a writ of mandamus is an appealable judgment. City of Baton Rouge v. Douglas, 2016-0655 (La. App. 1st Cir. 4/12/17), 218 So. 3d at 163. An appellate court reviews a district court's judgment denying a writ of mandamus under an abuse of discretion standard. Gulfsouth Credit, Inc. v. Wiley, 2019-0526 (La. App. 1st Cir. 1/9/20), 294 So. 3d 1096, 1097. Findings of fact in a

6

mandamus proceeding are subject to a manifest error standard of review. Zillow, Inc. v. Gardner, 2021-1172 (La. App. 1st Cir. 4/8/22), 341 So. 3d 765, 769. However, in determining the proper interpretation of a statute, which involves a question of law, appellate courts apply a *de novo* standard of review. Stevens Construction & Design, L.L.C. v. St. Tammany Fire Protection District No. 1, 2019-0955 (La. App. 1st Cir. 7/8/20), 308 So. 3d 724, 731, writ denied, 2020-00990 (La. 11/4/20), 303 So. 3d 652.

The general mandamus articles of the Louisiana Code of Civil Procedure define mandamus as a writ directed to a public officer to compel him to perform a ministerial duty required by law. See La. C.C.P. arts. 3861, 3863. A ministerial duty is a duty in which no element of discretion is left to the public officer. It is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law. Hoag v. State, 2004-0857 (La. 12/1/04), 889 So. 2d 1019, 1024. Mandamus will not lie in matters in which discretion and evaluation of evidence must be exercised. The remedy is not available to command the performance of an act which contains any element of discretion, however slight. City of Baton Rouge, 218 So. 3d at 163. To this point, in its petition for mandamus, LA Contracting prayed that the Levee District be ordered to perform its ministerial duty.

In this case, mandamus was filed seeking payment on a public contract pursuant to La. R.S. 38:2191. This court has held that where the legislature has statutorily provided mandamus as a remedy under La. R.S. 38:2191, the general rules for mandamus have limited application. Cf. Law Industries, LLC v. Board of Supervisors of Louisiana State University, 2018-1756 (La. App. 1st Cir. 3/2/20), 300 So. 3d 21, 30, writ denied, 2020-00745 (La. 10/6/20), 302 So. 3d 515, citing Jazz Casino Company, L.L.C. v. Bridges, 2016-1663 (La. 5/3/17), 223 So. 3d 488, 496-497. For example, LA Contracting was not required to show that relief was

not available by ordinary means or that the delay involved in obtaining ordinary relief may cause injustice, as required by La. C.C.P. art. 3862.[3] See Law Industries, LLC, 300 So. 3d at 30. Nonetheless, a public entity is not subject to mandamus compelling payment when the terms of the contract give the public entity discretion as to whether payment is due and payable. Mandamus relief under La. R.S. 38:2191 is available only when there is no discretion left to the public entity as to whether payment is due and payable under the terms of the contract. Stevens Construction & Design, L.L.C., 308 So. 3d at 732, citing Wallace C. Drennan, Inc. v. St. Charles Parish, 2016-177 (La. App. 5th Cir. 9/22/16), 202 So. 3d 535, 544.

Louisiana Revised Statute 38:2191 provides as follows:[4]

A. All public entities shall promptly pay all obligations including approved change orders, arising under public contracts when the obligations become due and payable under the contract. All progressive stage payments and final payments shall be paid when they respectively become due and payable under the contract.

B. (1) Any public entity failing to make any progressive stage payment within forty-five days following receipt of a certified request for payment by the public entity without reasonable cause shall be liable for reasonable attorney fees and interest charged at one-half percent accumulated daily, not to exceed fifteen percent. Any public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney fees and interest charged at one-half percent accumulated daily, not to exceed fifteen percent.

(2) Any interest received by the contractor pursuant to Paragraph (1) of this Subsection, shall be disbursed on a prorated basis among the contractor and subcontractors, each receiving a prorated portion based

---

[3]Louisiana Code of Civil Procedure article 3862 provides that mandamus is an extraordinary remedy to be applied where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice.

[4]Louisiana Revised Statute 38:2191 was recently amended by 2024 La. Acts, No. 165, § 1, to enact Section (E), which provides that:

A declaration that a public works contract is null and void as being contrary to the provisions of R.S. 38:2211 et seq., shall not affect amounts due and payable under the contract, including overhead and profit, for the work performed by or on behalf of the contractor.

on the principal amount due within ten business days of receipt of the interest.

C. The provisions of this Section shall not be subject to waiver by contract.

D. Any public entity failing to make any progressive stage payments arbitrarily or without reasonable cause, or any final payment when due as provided in this Section, shall be subject to mandamus to compel the payment of the sums due under the contract up to the amount of the appropriation made for the award and execution of the contract, including any authorized change orders.

Subsection D of La. R.S. 38:2191 sets forth two circumstances where mandamus relief is available against public entities: (1) when a public entity has failed to make progressive stage payments arbitrarily or without reasonable cause under a contract; or (2) when a public entity had failed to tender a final payment when due under the contract. Stevens Construction & Design, L.L.C., 308 So. 3d at 732. Moreover, under subsection A of La. R.S. 38:2191 the public entity's obligation to pay applies to "approved change orders." Thus, in order to be entitled to mandamus relief against the Levee District, LA Contracting must establish that the Levee District "arbitrarily or without reasonable cause" failed to make progressive stage payments or failed to make final payment "when due" under the contract. Stevens Construction & Design, L.L.C., 308 So. 3d at 732. "[R]easonable cause" for nonpayment exists when the terms of the contract do not mandate payment under certain circumstances of the particular case. Stevens Construction & Design, L.L.C., 308 So. 3d at 732.

A reading of La. R.S. 38:2191 in pari materia with the general mandamus articles of the Code of Civil Procedure demonstrates that a public entity is not subject to mandamus compelling payment of a progressive stage payment when the terms of the contract give the public entity discretion as to whether payment is due and payable. Wallace C. Drennan, Inc., 202 So. 3d at 544. As noted by the court in Drennan, when the legislative authorization of a mandamus action under La.

9

R.S. 38:2191(D) is construed with the pre-existing general mandamus articles set forth in La. C.C.P. arts. 3861, *et seq.*, so as to harmonize and reconcile those provisions, mandamus relief under La. R.S. 38:2191 is available only when there is no discretion left to the public entity as to whether payment is due and payable under the terms of the contract. Wallace C. Drennan, Inc., 202 So. 3d at 544.

In its reasons for judgment, the trial court determined that the contract provided that payment shall be made "as recommended by the Engineer," and that the Levee District's decision not to pay the fourth application for payment submitted by LA Contracting was based on the Engineer's recommendation that LA Contracting amend and resubmit the application. The trial court further determined that the reasons the Engineer provided LA Contracting for not approving the application were not arbitrary, but instead, "resulted from a disagreement between the parties regarding interpretation of the [c]ontract." In doing so, the trial court cited the following provisions of the contract:

### SECTION F

### STANDARD FORM OF AGREEMENT
### BETWEEN OWNER AND CONTRACTOR

**Article 5    PAYMENT PROCEDURE**

5.1    Progress Payments. OWNER shall make progress payments on the Contract Price on the basis of CONTRACTOR'S Applications for Payment as recommended by ENGINEER, on or about the 25th day of each month during construction as provided below. All progress payments will be made on the basis of the work measured by the schedule of values provided for in paragraph 14.1 of the General Conditions.

### SECTION I

### GENERAL CONDITIONS

**ARTICLE 14 – Payments to Contractor and Completion**

**14.4** REVIEW OF APPLICATIONS FOR PROGRESS PAYMENT: ENGINEER will, within ten days after receipt of each application for Payment, either indicate in writing a recommendation of payment and present the Application to OWNER, or return the Application to

CONTRACTOR indicating in writing ENGINEER'S reasons for refusing to recommend payment. In the latter case, CONTRACTOR may make the necessary corrections and re-submit the Application. Forty-five (45) days after presentation of the Application for Payment with ENGINEER'S recommendation, the amount recommended will (subject to the provisions of the last sentence of paragraph of 14.7) become due and when due will be paid by OWNER to CONTRACTOR.

Section 14.7 provides, in part, that the:

ENGINEER may refuse to recommend the whole or any part of any payment if, in the ENGINEER'S opinion, it would be incorrect to make such representations to OWNER. ENGINEER may also refuse to recommend any such payment, or, because of subsequently discovered evidence or the results of subsequent inspections or tests, nullify and such payment previously recommended, to such extent as may be necessary in ENGINEER'S opinion to protect OWNER from loss[.]

Mr. Landry testified at trial for LA Contracting. Mr. Landry testified that the bid item for excavation covers excavation on a contractor provided (offsite) pit or an onsite borrow pit and allows the Contractor to use borrow areas other than those indicated provided that the Engineer approves their location and dimensions. Mr. Landry contends on appeal that contract provisions 203.1, 203.2, and 203.3 confirm his option to excavate from onsite or offsite borrow pits. Mr. Landry testified that the dispute herein arose when the Levee District advised that it would not be paying for excavation from the onsite borrow pit. He stated that after LA Contracting submitted its fourth and final pay application seeking full payment for the total excavation amount and other bid items, the application was returned with comments by the Engineer setting forth his position. According to Mr. Landry, he responded by sending a letter to the Engineer reiterating his position that payment for the work performed utilizing material onsite fell under the excavation provisions of the contract. Mr. Landry disputed that treatment of onsite materials fell under embankment provisions where treatment of onsite materials required more work and was more labor intensive than utilizing material from an offsite pit. He testified that the Levee District was incorrect about the physical application in

11

the field and was incorrect in their measurement of onsite material used. Mr. Landry stated that when the Engineer responded maintaining its position that it would only recommend payment for 2,896 cubic yards of excavation and partial percentages for signage and barricades, construction layout, and utility oversight, he filed the petition for mandamus to compel payment.

The Levee District presented the testimony of its general manager, Nicholas Matherne. Mr. Matherne testified that the Levee District has discretion within the confines of the contract and that the contract specifies that the work has to be approved by the Engineer. He testified that he believed the source of the dispute between the Contractor and the Levee District was the definition of what was considered excavation versus what was considered embankment under the terms of the contract. According to Mr. Matherne, payment for onsite material was provided for as an embankment item in the bid documents. Mr. Matherne explained that when the project was designed and bid, in the specifications and plans, the amount of cubic yardage that was calculated as needed for embankment included the amount of material that had already been previously stockpiled onsite by a separate contractor. Thus, approximately 12,770 cubic yards of material that could have been taken from the stockpile and would have been utilized in the construction of the levee section at that project site. Mr. Matherne stated that LA Contracting's fourth pay application was reviewed by the Engineer and sent back to LA Contracting for revision and resubmittal. He testified that the Engineer has not recommended that the Levee District pay the fourth pay application submitted by LA Contracting.[5]

In its brief on appeal, LA Contracting contends that pursuant to Law Industries, LLC, 300 So. 3d at 30-31, the trial court was required to determine the

---

[5]The Public Works Bid Form described a base bid of $108,330.00 (quantity times unit price) for **excavation** with a unit price of $46.00. The same form described a base bid of $280,940.00 (quantity times unit price) for **embankment** with a unit price of $22.00.

amount due to it for work completed prior to the termination of the contract in a summary proceeding by virtue of the fact that it sought mandamus relief pursuant to La. R.S. 38:2191. However, in Law Industries, this court acknowledged that, before a trial court must determine an amount due for work completed, La. R.S. 38:2191(D) requires that certain "conditions must be met to seek prompt payment and provides a procedure for accomplishing this end that is consistent with the general mandamus principles and Louisiana jurisprudence." Law Industries, LLC, 300 So. 3d at 30.

Law Industries is factually distinguishable from the instant case. In Law Industries, the defendant alleged in a mandamus proceeding that no amounts were due under the public contract because it was entitled to withhold liquidated damages in accordance with the terms of the contract. Given the parties' agreement that the amount of stipulated damages was $29,000.00, the defendant contended it had a right to an offset in that amount under the contract. The trial court found that applying an offset of $500.00 per day in liquidated damages pursuant to the contract against the amount of stipulated damages involved an element of discretion and denied the plaintiff's petition for mandamus. Law Industries, LLC, 300 So. 3d at 24-25. The issue thus presented on appeal was whether the trial court could deduct the amount of liquidated damages as provided for in a public contract from the total amount due under the contract in a mandamus proceeding pursuant to La. R.S. 38:2191. Law Industries, LLC, 300 So. 3d at 27. This court determined that where La. R.S. 38:2191(D) states that a public entity "shall" be subject to a mandamus to compel the payment of any sums due under the contract, the trial court must determine the total amount of liquidated damages that is owed to the defendant, and remanded to the trial court to do so. Law Industries, LLC, 300 So. 3d at 29-30. Notably, in Law Industries there was

no dispute over the contract's interpretation or the sums due under the contract as in the case before us.

Instead, we find the Stevens case, which was handed down four months after Law Industries, LLC, more closely aligned with the facts herein. In Stevens, the contractor filed a petition for mandamus, pursuant to La. R.S. 38:2191, seeking payment on a contract with the public fire department. Payment under the public contract therein, however, was conditioned upon the issuance of a Certificate of Payment by the Architect following his evaluation of the work and determination that the work was in accordance with the contract documents. The contract further provided that the Architect could withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the fire department. The trial court denied mandamus relief for payment on the public contract requested by the contractor. On review, this court considered the evidence submitted therein, which included the public contract, payment applications submitted by the contractor, and letters from the Architect explaining the reasons for his decision to withhold payments, and noted that in each withholding, the Architect referenced the contract provision it relied on in support of its recommendation to withhold payment in whole or in part. Under these circumstances, this court determined that the public fire department was not arbitrary or without reasonable cause in withholding payment under the contract, and found no abuse of the trial court's discretion in denying mandamus relief. See Stevens Construction & Design, L.L.C., 308 So. 3d at 732-735.

We have thoroughly reviewed the evidence herein and find that both sides present compelling arguments outlining their opposing interpretations of the contract, as set forth above.[6] However, the contract provides that the Levee

---

[6]In doing so, we note that at the hearing, LA Contracting only presented the testimony of one witness, Mr. Landry, and the Levee District presented the testimony of one witness, Mr. Matherne.

14

District shall make payments as recommended by the Engineer, and for the reasons assigned by the Engineer, the Engineer made no such recommendation for full payment. Considering the Engineer's comments on the fourth pay application, which it returned to LA Contracting with instructions to amend and resubmit, and the correspondence exchanged between the parties explaining how they arrive at differing amounts due under their respective interpretations of the contract, we cannot say that the Levee District's decision to withhold the fourth and final payment was made "arbitrarily or without reasonable cause."[7] See Stevens Construction & Design, L.L.C., 308 So. 3d at 735. Such a finding is required before a writ of mandamus may issue. Accordingly, we find that LA Contracting has not established that it is entitled to mandamus relief to compel payment pursuant to La. R.S. 38:2191.

The facts of this case call us to further caution that mandamus is not a substitute for an ordinary proceeding. Here, LA Contracting's request for a writ of mandamus is not an appropriate substitute for the thorough vetting permitted through ordinary process. The issues raised through their respective interpretations of the contract are disputed and highly technical. The court is faced with disagreements over contractual interpretation and the underlying facts, which are steeped in engineering principals and jargon. While discovery is not prohibited within this action, the engagement of experts and the exchange of reports is particularly challenging within the context of a summary proceeding. To demand that the trial court resolve all of the disputes presented within an abbreviated timeframe would do a disservice to the litigants. As noted by Judge Welch in his

---

[7]We further note that to the extent that the contract requires that the Engineer review the applications for payment, and that approval of the application and recommendation for payment is based on the "opinion" of the Engineer, this exercise implies an element of discretion not appropriate for mandamus proceedings. See Stevens Construction & Design, L.L.C., 308 So. 3d at 732. Thus, because a determination as to whether payment is due and payable under the terms of the contract is subject to the Engineer's discretion, mandamus relief under La. R.S. 38:2191 is not available.

dissenting opinion in <u>Law Industries</u>, such an approach "merges the ordinary proceeding with the highly restricted mandamus summary proceeding and thwarts the legislative intent of La. R.S. 38:2191 for public entities to promptly pay monies owed under public contracts." <u>Law Industries, LLC</u>, 300 So. 3d at 35.

On review, we find no abuse of the trial court's discretion in denying LA Contracting's petition for mandamus relief.

## CONCLUSION

For the above and foregoing reasons, the January 12, 2024 judgment of the trial court is affirmed. All costs of this appeal are assessed against the appellant, LA Contracting Enterprise, LLC.

**AFFIRMED.**