849 So.2d 700 (2003)
Wade CLARK, Perry Tucker, Ann Guidry, Martha Lacaze and Harry Dawsey, Each Individually, and on Behalf of all Others Similarly Situated
v.
STATE of Louisiana, DEPARTMENT OF REVENUE
No. 2002 CA 0703.
Court of Appeal of Louisiana, First Circuit.
May 9, 2003.
*701 Stanley P. Baudin, Patrick W. Pendley, Plaquemine, for Plaintiffs-Appellees Wade Clark, et al.
Geneva Landrum, Baton Rouge, for Defendant-Appellee Cynthia Bridges, Secretary of Louisiana Department of Revenue.
James J. Davidson, III, Lafayette, for Intervenor-1st Appellant Southwest Louisiana Electric Membership Corporation.
V. Russell Purvis, Jonesville, for Intervenor-1st Appellant Concordia Electric Cooperative.
Ross A. Dooley, John M. Sharp, Baton Rouge, for Intervenors-2nd Appellants Dixie Electric Membership Corporation, et al.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
Members of various local electric cooperatives allege to have paid "a thing not owed" to the State of Louisiana in the form of Louisiana state sales taxes on $169,000,000.00 in electricity overcharges. Accordingly, certain individual members became plaintiffs in a class action lawsuit ("plaintiff class members") and seek a refund of Louisiana state sales taxes assessed on said overcharges that were remitted to the State via local electrical cooperatives between November 1996 and September 1999.
In the instant appeal, the local electric cooperatives that remitted the tax to the State on behalf of their members appeal a trial court judgment that denied their petitions for intervention in the class action lawsuit.

FACTS
According to the facts alleged in the underlying petition, Cajun Electric Power Cooperative, Inc. ("Cajun") was a Louisiana electric cooperative that generated and transmitted wholesale electric power to various local distribution cooperatives. Cajun filed for bankruptcy in the mid-1990s.
In 1996, the Louisiana Public Service Commission ("the Commission"), pursuant to its statutory authority, conducted a ratemaking review to align Cajun's rates with its then-current costs. The Commission found that since the appointment of the bankruptcy trustee, Cajun had not paid the accrued interest expense on its underlying debt. As a result, the Commission ordered that Cajun establish an escrow fund to deposit that portion of the charged electric rates allocated to interest expenses.
The petition alleges that the Commission did not eliminate the interest expense *702 from the ratepayers' electricity rates and bills between November 1996 and September 1999. Therefore, ratepayers continued to pay for the interest portion of the rates, as well as the accompanying Louisiana state sales taxes applicable for this portion of the rates.
In September of 1999, the Cajun bankruptcy case was resolved, and the Commission approved the settlement. As a condition of the settlement, the Commission received all of the funds held in the interest rate escrow account. The settlement provided that these escrowed funds be refunded or otherwise devoted to the benefit of ratepayers as directed by the Commission.
Consistent with the terms of the settlement, the Commission developed a plan whereby 100 percent of the overcharges of approximately $169,900,000.00 collected as the interest portion of the rates between November 1996 and September 1999 would be refunded to qualifying ratepayers. The refund payout schedule, according to the settlement, is as follows: approximately $132,100,000.00, or 78 percent of the overcharged rates collected, will be refunded by the local distribution cooperatives to ratepayers in the form of individual refund checks.
Although the aforementioned refund insures that the full amount of the overcharges, including interest, have been, or will be, returned to the ratepayers, this refund does not reimburse ratepayers for the sales tax paid on the overcharges collected. As a result, certain individual members have become plaintiffs in a class action lawsuit ("plaintiff class members") filed on their behalf in East Baton Rouge Parish on April 19, 2001.
On October 5, 2001, various local distribution cooperatives, Dixie Electric Membership Corporation ("DEMCO"); Claiborne Electric Cooperative, Inc.; Jefferson Davis Electric Cooperative, Inc.; Northeast Louisiana Power Cooperative, Inc.; South Louisiana Electric Cooperative Association; Valley Electric Membership Corporation; WashingtonSt. Tammany Electric Cooperative, Inc.; and Beauregard Electric Cooperative, Inc., moved to file a petition of intervention and a motion to quash subpoenas duces tecum[1]. Said motions were submitted to the trial court together with a supporting memorandum. On October 12, 2001, similar motions along with a supporting memorandum were filed on behalf of Southwest Louisiana Electric Membership Corporation ("SLEMCO") and Concordia Electric Cooperative ("Concordia"). The aforementioned electrical cooperatives (collectively, "the coops") were local distribution cooperatives for electricity produced by Cajun, and in said capacity, billed and collected Louisiana state sales taxes on their sales of electricity to their members.

ACTION OF THE TRIAL COURT
Following a hearing, the trial court signed a judgment on December 10, 2001, that denied the co-ops' motions to intervene in this matter and quash the subpoenas duces tecum. The judgment further ordered the co-ops to produce the information *703 sought in the subpoenas duces tecum within ten days.
On February 15, 2002, DEMCO, one of the co-ops herein, filed a motion for protective order as to the information sought in the subpoena duces tecum.[2] Also on said date, the co-ops separately appealed from the judgment of December 10, 2002.

ISSUE PRESENTED FOR REVIEW
In their respective briefs to this court, the co-ops have set forth a single issue for review by this court:
Whether the trial court erred in denying the co-ops' petitions for intervention?

DISCUSSION
The Louisiana Constitution of 1974 provides that the appellate jurisdiction of the courts of appeal extends to both law and facts. La. Const., art. V, § 10(B). A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La. 1993). When the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and enter a judgment on the merits. Rosell v. ESCO, 549 So.2d 840, 844 n. 2 (La.1989).
In denying the petitions for intervention filed by the co-ops, the trial court stated:
The petitioners, being the coops in this matter, seek to intervene solely on the interests and rights of their members and not on any cause of action claimed by the coops in their own right. The coops allege that they have a fiduciary duty to their members to pursue the tax refund in this action, but it is undisputed the rights to be asserted in this matter belong solely to the members as individuals.
....
The parties in this matter have pointed out that the case law provides a three-prong test to determine if it's proper for an association, such as the coops in the instant matter, to bring suit on behalf of their members where there's been an absence of injury to the association itself.
The members clearly have a right to bring the instant action to collect a refund as taxes that they paid. The first prong of the analysis is satisfied, as the coops are attempting to assert rights that belong to members as individuals.
The third prong of the analysis is met as the coops can assert the rights of individuals as members. Louisiana Revised Statute 47:2 and 47:1623 would allow the coop to assert the rights of individual taxpayers as coop members. The coops can litigate and obtain relief in the same manner as individual members. However, it is the second prong of the analysis that this court finds prohibits the intervention of the coops in this matter. The purpose of the coops is to sell electricity. The purpose of the coops is not to seek refunds of sales taxes collected from the individual taxpayers. The claims of individual members seeking refunds are not relevant to the purpose of the coops, which is to provide electric service to the individual members.
The coops have not shown that their members have authorized the coops to intervene or to pursue the individual claims in this matter. The function of *704 seeking the tax refunds on behalf of individuals is not relevant to the function of selling electricity.
The three-prong test cited by the parties and applied by the district court in this matter is a test for organizational or associational standing in cases where an organization seeks to restrain a public body from alleged unlawful action. See, Louisiana Associated General Contractors, Inc. v. State, Division of Administration, Office of State Purchasing, 95-2105, p. 5 (La.3/8/96) 669 So.2d 1185, 1190. Said test was previously adopted by the Louisiana Supreme Court in Louisiana Hotel-Motel Association, Inc. v. Parish of East Baton Rouge, 385 So.2d 1193 (La.1980) and is derived from the three-part test for associational standing set forth by the United States Supreme Court in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). See, Louisiana Associated General Contractors, Inc., 95-2105 at 5, 669 So.2d at 1190.
In Hunt, the Supreme Court held an association will have standing to bring a suit solely on behalf of its members and in the absence of injury to itself when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; (c) neither the claim asserted nor the relief requested requires the participation of individual members of the lawsuit. Hunt, 432 U.S. at 343, 97 S.Ct. at 2441.
In response to the finding by the trial court that the function of seeking the tax refunds on behalf of individuals is not relevant to the function of selling electricity, the coops herein assert that electrical cooperatives are unique and are authorized pursuant to the provisions of La. R.S. 12:401 et seq. Electric cooperatives are non-profit corporations organized by their members who agree to purchase all of their electricity needs from the cooperative. La. R.S. 12:408
The co-ops claim that member-owned electric cooperatives have a fiduciary obligation to their members to operate the cooperative efficiently and economically and must also protect the interests of their respective members. The co-ops further claim that in the instant case, the cooperatives have a responsibility to their members to recover sales taxes erroneously collected and remitted to the Department of Revenue ("DOR").
Conversely, plaintiff class members contend that since the co-ops did not actually pay the sales taxes at issue, they do not have standing to prosecute claims for sales tax refunds on behalf of their members. Plaintiff class members further contend that they are the ratepayers and the only proper party plaintiffs due a sales tax refund. According to plaintiff class members, the co-ops are not necessary or indispensable parties to this action. The plaintiff class members argue that since the co-ops were not the payers of the sales taxes at issue, they do not have standing to prosecute claims for sales tax refunds on behalf of their members.
In addition, La.Code Civ. P. article 1091 relating to interventions by third persons provides:
A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:
(1) Joining with plaintiff in demanding the same or similar relief against the defendant;
(2) Uniting with defendant in resisting the plaintiff's demand; or
*705 (3) Opposing both plaintiff and defendant.
Article 1091 and the cases construing that provision establish that the requirement for intervention is two-fold: the intervenor must have a justiciable interest in, and a connexity to, the principal action. Livingston Downs Racing Association, Inc. v. State, Through Edwards, 96-1988, p. 6 (La.App. 1 Cir. 9/23/97) 700 So.2d 1021, 1023. In Amoco Production Company v. Columbia Gas Transmission Corporation, 455 So.2d 1260, 1264 (La. App. 4 Cir.), writs denied, 459 So.2d 542 (La.1984), 459 So.2d 543 (La.1984), the court defined the term "justiciable right" as it is used in the context of an intervention as "the right of a party to seek redress or a remedy against either plaintiff or defendant in the original action or both, and where those parties have a real interest in opposing it."
Clearly, the co-ops in this matter have a justiciable right in making certain that their respective members, the ratepayers of the tax, receive the correct tax refund should the court ultimately determine that such a refund is due.
More troubling is the question of whether the co-ops possess the requisite degree of connexity required by La.Code Civ. P. art. 1091. The jurisprudence has held that the justiciable right must be "so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervenor's rights." Livingston Downs Racing Association, Inc. v. State, Through Edwards, 96-1988 at 7, 700 So.2d at 1024.
In connection with the brief submitted in this matter on behalf of defendant, the Secretary of the DOR, it is asserted that "the ends of justice would be best served by allowing the cooperatives to intervene due to the fact that it is the cooperatives that are most familiar with who, if anyone, is entitled to a refund of tax in this matter." The DOR further asserts:
The cooperatives collect the tax from the ratepayer and remit the tax to the Department of Revenue. Therefore, cooperatives already possess knowledge of the names and the addresses of each ratepayer and the cooperatives know the rate paid by the ratepayers and the amount of tax paid pursuant to the rates. The cooperatives will have the ability to distribute the refund, if one is determined to be due to the ratepayers without excessive fees [and] costs of administration because the customers are already identifiable and the method of reaching them is already determined through the cooperative database.
The DOR argues that the connexity requirement of La.Code Civ. P. art. 1091 is met because "it was the cooperatives that collected the tax from the ratepayers and it is the cooperatives that are familiar with who those ratepayers are."
Plaintiff class members respond with the argument that the record contains no evidence to support the DOR's contention that plaintiff class members will be unable to identify the ratepayers due a refund or that the administrative costs/fees will be lower if the co-ops are allowed to intervene in this action. Plaintiff class members allege that they have previously obtained the identities of a vast majority of the ratepayers affected through subpoena duces tecums directed to the co-ops, and claim that the Louisiana Code of Civil Procedure affords ample tools to obtain whatever information they need from third parties, including the co-ops, to prosecute their claims. It is the position of the plaintiff class members that a judgment on the principal action in their favor will not have a direct impact on the rights of the co-ops who seek to intervene.
We must agree. There is no evidence in the record before us to establish that the *706 interests of the co-ops are so related or connected to the taxes on electricity paid by their members that a judgment on the issue of a tax refund will have a direct impact on the rights of the co-ops who seek to intervene in this matter. Additionally, the authority of electrical co-ops to represent and take action on behalf of their members is set forth in La. R.S. 12:401 et seq., or their respective articles of incorporation and bylaws. Based upon our review of La. R.S. 12:401 et seq., this court finds no authority for electrical coops to pursue through legal proceedings the collection of sales taxes overpaid by their respective members. Further, the co-ops themselves have failed to cite any provision of their respective corporate articles or bylaws that would grant them this authority. Absent law or evidence cited by the electrical co-ops that authorizes said co-ops to pursue the collection of sales taxes overpaid by their respective members, we decline to permit their intervention in this matter.
While we agree that the respective coops undoubtedly possess information that could expedite the distribution of a tax refund in the event such a refund is subsequently ordered by the court, this fact alone is insufficient to warrant the co-ops' intervention in this action. Accordingly, we must conclude that the trial court did not err in denying the co-ops' petitions for intervention.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court denying the co-ops' petitions for intervention is hereby affirmed. All costs associated with this appeal shall be assessed against the coops, Dixie Electric Membership Corporation ("DEMCO"); Claiborne Electric Cooperative, Inc.; Jefferson Davis Electric Cooperative, Inc.; Northeast Louisiana Power Cooperative, Inc.; South Louisiana Electric Cooperative Association; Valley Electric Membership Corporation; WashingtonSt. Tammany Electric Cooperative, Inc.; Beauregard Electric Cooperative, Inc.; Southwest Louisiana Electric Membership Corporation ("SLEMCO"); and Concordia Electric Cooperative ("Concordia").
AFFIRMED.
FITZSIMMONS, J., dissents and assigns reasons.
FITZSIMMONS, Judge, dissenting with reasons.
The road from Thebes to Athens goes from Athens to Thebes. There is no reason to detour to Sparta when addressing *707 the subject of tax overcharges.1 I would reverse the trial court and grant the cooperatives' petition for intervention.
Thus, I respectfully dissent from the majority's legal conclusion that the local distribution cooperatives do not have standing to intervene in the instant lawsuit. The local distribution cooperatives were the sole conduit through which the Louisiana Public Service Commission delegated the refunding of overcharges. Thus, the role of the cooperatives as a necessary entity for the return of tax refunds is inextricably related to the cooperatives' function and purpose. 
NOTES
[1] As part of their motion to quash, the co-ops alleged that some of them had been served by plaintiff class members with subpoenas duces tecum requesting that they produce certain documentation regarding customers who received utility rate overcharge refund checks as well as the amount of the refund check received by each customer. The co-ops claimed that the requested documentation is designed solely to identify the names and addresses of potential class members. The coops further claimed that their petition for intervention obviated the need for them to produce the requested documentation.
[2] The trial court scheduled a hearing on DEMCO's motion for protective order for April 8, 2002; however, the record does not disclose the outcome of said hearing.