STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0955

STEVENS CONSTRUCTION & DESIGN, L.L.C.

VERSUS

ST. TAMMANY FIRE PROTECTION DISTRICT NO. 1

Judgment Rendered:  **'JUL 0 8 2020**

* * * * *

On Appeal from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 2018-14143

Honorable Martin E. Coady, Judge Presiding

* * * * *

Charles K. Chauvin          Attorney for Plaintiff-Appellant,
Jane Williams Chauvin       Stevens Construction & Design, L.L.C.
Destrehan, LA


Troy G. Ingram             Attorney for Defendant-Appellee,
Slidell, LA                St. Tammany Fire Protection District No. 1


Albert Dale Clary          Attorneys for Defendant/Intervenors-Appellees,
Adrian G. Nadeau           Domain Architecture, APAC,
J. Weston Clark            Greenleaf Lawson Architects, APAC, and
Baton Rouge, LA            Domain Architecture + Greenleaf Baton Rouge,
                           Architects, A Joint Venture

* * * * *

BEFORE:  HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

LANIER, Concurs without reasons

**HIGGINBOTHAM, J.**

In this mandamus proceeding, the contractor in a public works contract appeals the trial court judgment dismissing the contractor's petition for a writ of mandamus and exceptions of improper joinder, no cause of action, and no right of action.

## FACTS AND PROCEDURAL HISTORY

On May 11, 2017, Stevens Construction & Design, L.L.C. (Stevens Construction) entered into a public works contract with the St. Tammany Fire Protection District No. 1 (Fire District), wherein Stevens Construction would serve as the general contractor for the construction of a new fire station and headquarters building located at 522 Robert Boulevard and 530 Robert Boulevard in Slidell, Louisiana (the construction contract). The total sum for the construction project was $2,845,678.00. The architect for the project was a joint venture between two architectural firms, Domain Architecture, APAC (Domain) and Greenleaf Lawson Architects, APAC (collectively "the Architect"). The Architect entered into a separate contract with the Fire District to provide design services and administer the construction contract between the Fire District and Stevens Construction as the Fire District's representative (the architecture contract). The Architect's obligations included reviewing Stevens Construction's pay applications, evaluating if the work was done in conformance with the construction contract, and certifying the applications to the Fire District for payment.

The construction contract between the Fire District and Stevens Construction provided for completion of the project in 365 calendar days. Construction work on the project began on June 1, 2017, pursuant to a "Notice to Proceed" issued by the Fire District. An additional 47 calendar days were added to the construction contract's completion date pursuant to approved change orders, making July 18,

2018 the scheduled date of substantial completion. However, the project was not complete by that date.

During construction, some of Stevens Construction's pay applications on the project were not certified by the Architect, either in whole or in part, and payments were withheld from Stevens Construction. Specifically, on April 9, 2018, the Architect issued a letter to Stevens Construction advising that "Pay Application No. 9 will show a **deducted** amount of $24,600.44 in reference to K Barber Enterprises' claim of non-payment." On August 15, 2018, by letter, the Architect informed Stevens Construction that it was deducting from Pay Application No. 13 in the amount of $161,228.78 for the following reasons: incomplete work, claims of nonpayment by third parties, and liquidated damages for being behind schedule. On August 22, 2018, Fire Chief Chris Kaufmann sent a letter to Stevens Construction and its surety by electronic and certified mail, summarizing his concerns with Stevens Construction's performance on the project and directing Stevens Construction to stop work on the project by 4:00 p.m. on August 23, 2018. After Stevens Construction had been terminated, it submitted Pay Application No. 14. The Architect responded stating that under Section 14.2.3, when the Fire District terminated the construction contract, Stevens Construction shall not be entitled to further payments until the work is finished. Thereafter, Stevens Construction also submitted Pay Applications Nos. 15 and 16 and neither application was certified for payment by the Architect.

On August 23, 2018, Stevens Construction filed a verified petition for temporary restraining order, preliminary injunction, permanent injunction, and writ of mandamus contending that the Fire District improperly withheld payment on Pay Application No. 9. Stevens Construction named the Fire District as the defendant. On August 24, 2018, the trial court signed a temporary restraining order, enjoining the Fire District from taking any further action to enforce the subject stop work order

3

or otherwise bar Stevens Construction from continuing to complete its work on the project. On September 4, 2018, the Fire District issued a Notice of Termination to Stevens Construction detailing the reasons the Fire District found sufficient cause for terminating Stevens Construction. Attached to the Notice of Termination was the Architect's certification-of-cause letter providing reasons why sufficient cause existed for terminating Stevens Construction.

The trial court held a hearing on the preliminary injunction on September 4 and 6, 2018. Following the hearing, the trial court found that Stevens Construction's request for a preliminary injunction should be denied, and that its temporary restraining order should likewise be dissolved. Stevens Construction appealed this ruling, but the appeal was untimely and was dismissed. **Stevens Construction & Design, L.L.C. v. St. Tammany Fire Protection District No. 1**, 2018-1759 (La. App. 1st Cir. 1/16/20), __So.3d__, __. As a result, the only issue that remained from the original petition was Stevens Construction's request for a writ of mandamus compelling payment by the Fire District under La. R.S. 38:2191.

On September 5, 2018, Domain filed a petition for intervention stating that it has an interest in the action in order to fulfill its contractual obligations, enforce its contractual rights, and participate in the proceeding that seeks a judicial determination as to the performance of its contractual obligations. Stevens Construction answered Domain's petition for intervention asserting a dilatory exception of improper joinder and a peremptory exception of no cause action. In the exceptions, Stevens Construction argued that Domain was not a party to the construction contract between Stevens Construction and the Fire District, and therefore had no community of interest with the Fire District. Stevens Construction also argued that Domain failed to state a justiciable cause between the parties that is related or connected to the facts in the principal demand. Thereafter, Stevens Construction filed two amended petitions contending that the Fire District also

4

improperly withheld payment on Pay Application Nos. 13, 14, 15, and 16, and seeking a writ of mandamus to compel payment under Pay Application Nos. 9, 13, 14, 15, and 16.

Stevens Construction's petition for writ of mandamus seeking payment under Pay Application Nos. 9, 13, 14, 15, and 16, and Stevens Construction's exceptions of improper joiner and no cause of action came before the court for a hearing on January 3, 2019. Prior to addressing the mandamus action, the trial court orally ruled permitting Domain to intervene in the suit.

After the hearing, the trial court allowed all parties to submit post-hearing memoranda. Prior to the trial court rendering a judgment, Stevens Construction filed a peremptory exception raising the objection of no right of action again contending that Domain had no interest in the matter because Domain did not introduce evidence of the joint venture or a separate contract with the Fire District. In response, Domain requested leave to file an amended petition with the sole purpose of adding to the petition for intervention, Greenleaf Lawson Architects, APAC and Domain Architecture + Greenleaf Architects, A Joint Venture as petitioners/intervenors. On January 17, 2019, Stevens Construction requested permission to file an omnibus amended and restated petition for the purpose of removing all references to the Architect and limiting the focus of the suit to the Fire District.

After a hearing on January 29, 2019, the trial court denied Stevens Construction's exception of no right of action, allowed Domain's leave to file its amended petition for intervention to add petitioners, and denied Stevens Construction's leave to file its post-trial omnibus amended petition. On February 11, 2019, the trial court signed a judgment dismissing Stevens Construction's petition for writ of mandamus and no right of action, and on February 26, 2019, the trial court signed a judgment denying Stevens Construction's dilatory exception of improper joinder and peremptory exception of no cause of action.

5

It is from the February 11, 2019 judgment that Stevens Construction appeals. While Stevens Construction raised several assignments of error, its appeal raises primarily two main issues: (1) Whether the intervention of Domain, who was not a party to the construction contract and was only one party to the joint venture, was proper, and (2) Whether the trial court erred in dismissing Stevens Construction's writ of mandamus.[1]

## LAW AND ANALYSIS

### I.   INTERVENTION

Stevens Construction contends that Domain's intervention in the proceeding was improper, and therefore any evidence presented by Domain at the mandamus hearing should be stricken from the record. Stevens Construction contends that because the Fire District did not call any witnesses or present any evidence, without the evidence presented by Domain, a reversal of the judgment denying its writ of mandamus is warranted.

Louisiana Code of Civil Procedure article 1091 provides:

A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:

(1) Joining with plaintiff in demanding the same or similar relief against the defendant;

(2) Uniting with defendant in resisting the plaintiff's demand; or

(3) Opposing both plaintiff and defendant.

Article 1091 and the jurisprudence construing it establish that the requirement for intervention is two-fold: the intervenor must have a justiciable interest in, and a

---

[1] On appeal, the Fire District filed a peremptory exception raising the objection of no cause of action. In its exception, the Fire District contends that Stevens Construction's petition fails to state a cause of action for mandamus under La. R.S. 38:2191. We find that accepting all well-pleaded allegations as true in Stevens Construction's petition, the petition sufficiently states a cause of action pursuant to its contract with the Fire District and La. R.S. 38:2191. In its petition and amended petition, Stevens Construction alleged that it submitted pay requests to a public entity, the Fire District, the Fire District withheld its payments that were due under the contract, and the Fire District's refusal to pay was in violation of public bid law.

6

connexity to, the principal action. **Clark v. State, Dept. of Revenue**, 2002-0703 (La. App. 1st Cir. 5/9/03), 849 So.2d 700, 705, writs denied, 2003-1600, 2003-1619 (La. 10/3/03), 855 So.2d 320, 321. A "justiciable interest" is defined as "the right of a party to seek redress or a remedy against either [the] plaintiff or defendant in the original action or both, and where those parties have a real interest in opposing it." **Mike M. Marcello, Inc. v. Louisiana Gaming Control Board**, 2004-0488 (La. App. 1st Cir. 5/6/05), 903 So.2d 545, 548 (*quoting* **In re Succession of Walker**, 2002-625 (La. App. 5th Cir. 12/11/02), 836 So. 2d 274, 277.) The right, if it exists, must be so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervenor's rights. **Id.** An intervenor takes the proceedings as he finds them and cannot change the issues between the parties or raise new ones. **IberiaBank v. Live Oak Circle Development, L.L.C.**, 2012-1636 (La. App. 1st Cir. 5/13/13), 118 So.3d 27, 32.

Stevens Construction's petition for a writ of mandamus repeatedly alleged that the Architect failed to perform its obligations under the construction contract and architecture contract. The petition stated: "[t]he Architect failed to comply with Section 9.4.1 of the [construction] contract," "the Architect would not take action until six more days after the deadline," "the Architect failed to comply with the seven day deadline," and "[Stevens Construction] has never received a notice of rejection of work from the Architect."

Based on our review of this record, we find Domain clearly satisfied the two-part test for intervening in the pending litigation. Domain has a justiciable interest in the action as Stevens Construction was asking the trial court to make several factual findings regarding Domain's performance under its contract with the Fire District, as well as under sections of the construction contract. Domain's intervention has sufficient connexity to the principal action as the defense of the Architect and the Fire District arise out of identical facts, and any judgment rendered

7

on the principal action would have a direct impact on Domain's rights under its contract with the Fire District. We find no error in the trial court's decision to deny Stevens Construction's exceptions of improper joinder and no cause of action.

Additionally, we find no error in the trial court judgment denying Stevens Construction's exception of no right of action, or allowing Greenleaf Lawson Architects, APAC and Domain Architecture + Greenleaf Architects, A Joint Venture to be added as petitioners/intervenors after the mandamus hearing.[2] The architecture contract lists the Architect as Domain Architecture + Greenleaf Architects, A Joint Venture, the joint venture's letterhead is used throughout the record, and Stevens Construction in its original petition acknowledged that "[a]t all times the Architect for the Project has been a joint venture between two architectural firms, Domain Architecture ... and Greenleaf Lawson Architects." Stevens Construction was not prejudiced by adding the additional intervenors after completion of the mandamus hearing.[3]

## II. MANDAMUS

We turn now to Stevens Construction's contention that the trial court erred in denying its mandamus action under La. R.S. 38:2191. An appellate court reviews a

---

[2] A joint venture results from the undertaking by two or more persons to combine their efforts, knowledge, property or labor to engage in and carry out a single business venture for joint profit. **Riddle v. Simmons**, 589 So.2d 89, 92 (La. App. 2d Cir. 1991), writ denied, 592 So.2d 1316 (La. 1992). A joint venture is analogous to a partnership and controlled largely by the rules applicable to partnerships. There must be a sharing of the profits and losses with each party having some right of control over the business. The existence or non-existence of a joint venture is a question of fact and each case must be considered according to its circumstances. **Id.** No formal or specific agreement is required. Generally, the relationship may be formed by an oral agreement and the existence of a joint venture may be inferred from the conduct of the parties and other circumstances. **Id.** We find no error in the trial court's factual finding that Domain and Greenleaf entered into a valid joint venture.

[3] While Stevens Construction makes several creative arguments about the validity of Domain's intervention, we addressed the arguments only briefly because, regardless of whether Domain or the Joint Venture had a right to intervene, the salient issue in this appeal is whether the trial court correctly determined that the Fire District should not be subject to mandamus under La. R.S. 38:2191. The evidence relied on by the trial court to conclude mandamus was not appropriate, including the contracts, the pay applications, and the letters sent by the Architect regarding pay application withholdings were introduced into the record by joint stipulation and not solely by Domain. Without the evidence presented by joint stipulation, Stevens Construction certainly would not have sufficient evidence to prove mandamus was appropriate in this case.

trial court's judgment denying a writ of mandamus under an abuse of discretion standard. **Chaisson v. State, Department of Health & Hospitals through Registrar of Vital Records**, 2017-0642 (La. App. 4th Cir. 3/7/18), 239 So.3d 1074, 1078, writ denied, 2018-00540 (La. 5/25/18), 243 So.3d 567. "[F]indings of fact in a mandamus proceeding are subject to a manifest error standard of review." **Id.** However, in prior appeals involving the interpretation of La. R.S. 38:2191 relative to a money judgment a *de novo* standard of review is applicable because "the proper interpretation of a statute is necessarily a question on law." See **Quality Design and Construction, Inc. v. City of Gonzales**, 2013-0752 (La. App. 1st Cir. 3/11/14), 146 So.3d 567, 569-570.[4]

The general mandamus article of the Louisiana Code of Civil Procedure defines mandamus as "a writ directing a public officer, a corporation or an officer thereof, or a limited liability company or a member or manager thereof, to perform any of the duties set forth in Articles 3863 and 3864." La. Code Civ. P. art. 3861. A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, or to a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor. La. Code Civ. P. art. 3863. A ministerial duty is "a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." **Hoag v. State**, 2004-857 (La.

---

[4] Stevens Construction suggests that the trial court made legal error in its interpretation of La. R.S. 38.2191 and La. R.S. 38:2248. We reject Stevens Construction's argument that under La. R.S. 38:2191 a public entity is not permitted to exercise any discretion in withholding payment upon receipt of a certified pay application and any contractual provision that allows for discretion is null and void. The Statute provides for mandamus to compel payment of sums due under the contract and does prohibit contractual provisions that allow the Architect to withhold a certificate for payment in whole or in part for reasons set forth in the contract.

Further, we are not persuaded by Stevens Construction's argument that the trial court failed to comply with La. R.S. 38:2248(A) by withholding more than the 5% allowed by law. Louisiana Revised Statute 38:2248 prohibits public works contracts from containing a provision withholding more than five percent of the contract price until the expiration of forty-five days after the recordation of the formal acceptance of such work, or notice of default by the contractor or subcontractor. By the plain terms of the statute, it disallows a contract provision allowing for more than 5% retainage. The contract herein contained no such provision allowing for more than 5% retainage.

12/1/04), 889 So.2d 1019, 1024. The critical element necessary for the issuance of mandamus is that "the public official to whom the writ is directed may exercise no element of discretion when complying." **Id**. If a public officer is vested with any element of discretion, mandamus will not lie. **Id**. Payments for public contracts are governed by Louisiana Revised Statutes Title 38, Chapter 10. Specifically, La. R.S. 38:2191 provides:

> A. All public entities shall promptly pay all obligations arising under public contracts when the obligations become due and payable under the contract. All progressive stage payments and final payments shall be paid when they respectively become due and payable under the contract.

> B. (1) Any public entity failing to make any progressive stage payment within forty-five days following receipt of a certified request for payment by the public entity without reasonable cause shall be liable for reasonable attorney fees and interest charged at one-half percent accumulated daily, not to exceed fifteen percent. Any public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney fees and interest charged at one-half percent accumulated daily, not to exceed fifteen percent.

> (2) Any interest received by the contractor pursuant to Paragraph (1) of this Subsection, shall be disbursed on a prorated basis among the contractor and subcontractors, each receiving a prorated portion based on the principal amount due within ten business days of receipt of the interest.

> C. The provisions of this Section shall not be subject to waiver by contract.

> D. Any public entity failing to make any progressive stage payments arbitrarily or without reasonable cause, or any final payment when due as provided in this Section, shall be subject to mandamus to compel the payment of the sums due under the contract up to the amount of the appropriation made for the award and execution of the contract, including any authorized change orders.

Subsection D of La. R.S. 38:2191 sets forth two circumstances where mandamus relief is available against public entities: (1) when a public entity has failed to make progressive stage payments arbitrarily or without reasonable cause

10

under a contract; or (2) when a public entity had failed to tender a final payment when due under the contract.

Thus, in order to be entitled to mandamus relief against the Fire District, Stevens Construction must establish that the Fire District "arbitrarily or without reasonable cause" failed to make progressive stage payments or failed to make final payment "when due" under the contract. See **State through Morrell v. City of New Orleans through Landrieu**, 2017-0110 (La. App. 4th Cir. 12/21/17), 234 So.3d 1071, 1080, writ denied, 2018-0116 (La. 3/9/18), 237 So.3d 1192, (holding that plaintiff as the party seeking the writ of mandamus, has to establish that they were entitled to the relief provided by this extraordinary remedy). The public entity is not subject to mandamus compelling payment when the terms of the contract give the public entity discretion as to whether payment is due and payable. Mandamus relief under La. R.S. 38:2191 is available only when there is no discretion left to the public entity as to whether payment is due and payable under the terms of the contract. **Wallace C. Drennan, Inc. v. St. Charles Parish**, 2016-177 (La. App. 5th Cir. 9/22/16), 202 So.3d 535, 544. "[R]easonable cause" for nonpayment exists when the terms of the contract do not mandate payment under certain circumstances of the particular case. **Id.**

The following are relevant provisions from the construction contract, including the general conditions of the construction contract, that were relied on by the trial court to provide when payment is due and when a certificate for payment can be withheld:

**Section 5.2.1** "Final payment constituting the entire unpaid balance of the Contract Sum, less retainage as set forth in Section 5.1.6, shall be made by the Owner to the Contractor when .1 the Contractor has fully performed the Contract...; and
.2 a final Certificate for Payment has been issued by the Architect."

**Section 5.2.2** provides in part: "[t]he normal retainage shall not be due the contractor until after Substantial Completion and expiration of the forty-five day lien period

11

and submission to the Architect of a clear lien certificate, consent of surety and invoice for retainage."

**Section 9.5.1** "The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made."

Also, **Section 9.5.1** allows for the Architect to protect the owner from loss resulting from: ".1 defective work not remedied; .2 third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor; .3 failure of the Contractor to make payments properly to Subcontractors or for labor, materials, or equipment; .4 reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum; .5 damage to the Owner or separate contractor; .6 reasonable evidence that the Work will not be completed within the Contract Time, and the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or .7 repeated failure to carry out the work in accordance with the Contract Documents."

**Section 9.4.2** provides that: "[t]he issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment that, to the best of the Architect's knowledge, information, and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents."

**Section 14.2.3** provides: "when the Owner terminates the Contract for one of the reasons stated in Section14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished."

After hearing the testimony and considering many documents related to Stevens Construction's writ of mandamus, the trial court provided the following detailed reasons for its decision to deny Stevens Construction's writ of mandamus under each pay application at issue.

Pay Application No. 9

> In a letter, ... Justin Greenleaf, one of the architects on the project, notified [Stevens Construction] that $24,600.44 was being withheld from certification on pay application 9 because of a claim of nonpayment made by a third-party vendor... .

> [Stevens Construction] submitted a "Claim" as set forth in the contract disputing the withholding from pay application 9. The architect, in its contractual role as Initial Decision Maker ("IDM"), responded to and rejected [Stevens Construction's] claim, citing section 9.5.1 of the General Conditions, which specifically authorizes the architect to withhold certification "to the extent reasonably necessary

12

to protect the Owner...because of...third party claims filed or reasonable evidence indicating probable filing of such a claim."

Based on the evidence and contractual provisions, the Court finds that the $24,600.44 which was withheld from certification in pay application 9 was not "due and payable" under the terms of the contract, and the Fire District's action in withholding payment of $24,600.44 was not arbitrary or without reasonable cause under the circumstances. (Footnote omitted.)

Pay Application No. 13[5]

[Stevens Construction] submitted a request for payment in the amount of $451,257.48 in payment application 13... The architect withheld $125,299.08 from the total requested due to a finding of incomplete work at the time of billing, claims of non-payment by a third-party, and liquidated damages. [Stevens Construction] submitted a Claim objecting to the withholdings which was subsequently denied by the architect in its role as IDM. In the IDM ruling, the architect addressed each line item for which it withheld certification with reasons explaining each withholding, attaching photos of its observations at the project site. A total of $89,203.45 was deducted from the pay application due to the architect's finding of incomplete work at the time of billing. (Footnotes omitted.)

As to the withholding of $25,625.63 due to a claim of non-payment by ABC Supply, as noted previously, the General Conditions of the contract allow for withholdings due to "third party claims".

\* \* \*

Accordingly, the Court finds that the amounts withheld from certification in pay application 13 were not "due" under the terms of the contract, and therefore the Fire District was not arbitrary or without reasonable cause in not paying those amounts withheld from certification.

Pay Application No. 14

[Stevens Construction] submitted pay application 14 on August 31, 2018 which was never certified or paid. On August 24, 2018, the Fire District gave [Stevens Construction] seven days notice of its termination of the contract for Cause under Section 14.2.2 of the General Conditions, and a Notice of Termination for cause letter was issued to [Stevens Construction] on September 4, 2018. In a letter dated September 7, 2018 to [Stevens Construction] the Architect asserts that pay application 14 could not be certified because section 14.2.3 of the

---

[5] In its reasons for finding that the amounts under Pay Application No. 13 were not due, the trial court thoroughly considered Stevens Construction's argument that under the **Woodrow Wilson** decision, the Fire District cannot justify withholding payments based on a claim of liquidated damages for delay. We agree with the trial court's conclusion that the **Woodrow Wilson** case, which considered liquidated damages when all express terms for final payment of a contract were met, is distinguishable from the circumstances in this matter. See **Woodrow Wilson Construction LLC v. Orleans Parish School Board**, 2017-0936 (La. App. 4th Cir. 4/18/18), 245 So.3d 1, writ denied, 2018-0971 (La. 10/8/18), 253 So. 3d 793.

13

General Conditions of the contract provides that "when the owner terminates the contract for one of the three reasons stated in section 14.2.1, the contractor shall not be entitled to receive further payment until the work is finished." At the time pay application 14 was submitted, the work on the project was not finished, so pursuant to the contract the architect could not certify the release of any funds to the contractor. Accordingly, the Court finds that the amounts withheld from certification in pay application 14 were not "due" under the terms of the contract, and therefore the withholding of payment by the Fire District under the circumstances was not arbitrary or without reasonable cause.

Pay Application No. 15

In pay application 15, [Stevens Construction] requested final payment of the remainder of the contract balance, less a five percent retainage. The Architect asserts that to receive final payment under the contract, the contractor must have fully performed the contract, and a final Certificate for Payment must be issued by the Architect. Other requirements include approval and acceptance of a substantial completion certificate, formal final acceptance of the work, a receipt of clear lien and privilege certificate from the contractor, and various other requirements. There was no evidence presented to support that these contractual requirements were met. (Footnote omitted.)

\* \* \*

The evidence clearly establishes that the requirements for final payment were not met, therefore no ministerial duty arose. The Court also notes that under the circumstances, the Fire District had reasonable cause to withhold final payment.

Pay Application No. 16

In pay application 16, [Stevens Construction] requested the $142,587.46 retainage amount that had been withheld during the contract. Pursuant to section 5.2.2 of the agreement, retainage "shall not be due the contractor until after 1) substantial completion, 2) expiration of the forty-five day lien period and submission to the Architect of a clear lien certificate, 3) consent of the surety, and 4) invoice for retainage." The Court finds that none of the requirements for payment of retainage under the contract have been met. Therefore, there were no amounts due to be paid in pay application 16, and the Fire District had reasonable cause to withhold payment for the retainage payment in pay application 16. (Footnote omitted.)

In seeking a writ of mandamus, Stevens Construction had the burden of proving that the Fire District was arbitrary or without reasonable cause in not making progressive stage payments under the contract; or failed to tender final payment when due under the contract. As pointed out by the trial court, the valid provisions

of the construction contract herein do not mandate payment under the circumstances presented in this case and allow for discretion in payment when the provisions of the contract are not met. The evidence submitted by joint stipulation included the construction contract, pay applications submitted by Stevens Construction, and letters from the Architect explaining the reasons for withholdings payment. In each withholding the Architect listed what provision of the contract it was considering to recommend that the payment not be made in whole or in part. After thorough review of the record, as well as the trial court's extensive written reasons, we find no manifest error in the trial court's finding that the Fire District was not arbitrary or without reasonable cause in not making progressive stage payments under the construction contract, or that the Fire District did not fail to tender final payment when due under the construction contract. Accordingly, we find no abuse of discretion by the trial court in denying Stevens Construction's writ of mandamus.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of the appeal are assessed to plaintiff-appellant, Stevens Construction & Design, L.L.C.

**AFFIRMED.**

15