WALLACE C. DRENNAN, INC.　　*　　NO. 2023-CA-0193

VERSUS　　　　　　　　　　*

　　　　　　　　　　　　　　COURT OF APPEAL

LATOYA CANTRELL, IN HER　　*

OFFICIAL CAPACITY AS THE　　　FOURTH CIRCUIT

MAYOR OF THE CITY OF　　　*

NEW ORLEANS, JOSH　　　　　STATE OF LOUISIANA

HARTLEY, IN HIS OFFICIAL　* * * * * * *

CAPACITY AS ACTING

DIRECTOR OF THE

DEPARTMENT OF PUBLIC

WORKS, CITY OF NEW

ORLEANS, AND THE CITY OF

NEW ORLEANS

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-08718, DIVISION "B-5"
Honorable Rachael Johnson,
* * * * * *
**Judge Karen K. Herman**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge Karen K. Herman)

**BROWN, J., CONCURS IN THE RESULT**

Loretta Gallaher Mince
FISHMAN HAYGOOD, L.L.P.
201 St. Charles Avenue
Suite 4600
New Orleans, LA 70170-4600

　　COUNSEL FOR PLAINTIFF/APPELLANT

Bernard Joseph Blair, II
Corwin M. St. Raymond
Donesia D. Turner
CITY ATTORNEY
1300 Perdido Street
City Hall - Room 5E03
New Orleans, LA 70112

　　COUNSEL FOR DEFENDANT/APPELLEE

　　**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED**
　　　　　　　　　　　　　　**OCTOBER 25, 2023**

Plaintiff-Appellant, Wallace C. Drennan, Inc., ("WCD") appeals the trial court's December 27, 2022 judgment, which partially denied its alternative writ of mandamus and declined to award interest for the failure of the Defendant-Appellee, City of New Orleans ("the City"), to timely pay six invoices pursuant to La. R.S. 38:2191. For the following reasons, we reverse in part, affirm in part, and remand the matter for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

This matter involves delayed payment of several invoices for construction services rendered by WCD for the City.

WCD and the City entered into a contract for a Public Works Act project titled "RR133 – Pines Village Group A" ("the Contract") on November 25, 2019. The Contract expressly incorporated, among other things, the City's General Specifications for Street Paving, which provided that "[d]uring the progress of the work the Contractor [WCD] shall be paid monthly for work completed during the month." The Contract further provided that payments shall be made in accordance with law.

1

The record provides that WCD was required to submit its invoices to All South Consulting Engineers, LLC ("All South"), a company which provided professional design and construction administration services to the City for the project. All South was required to review WCD's invoices and deliver them to the City. WCD also uploaded its invoices into BRASS, the City's online accounting system; however, there was no requirement in the Contract to do so.

On September 19, 2022, WCD filed a petition for writ of mandamus against Defendants-Appellees, LaToya Cantrell, in her official capacity as the Mayor of New Orleans; Josh Hartley in his official capacity as Acting Director of the Department of Public Works; and the City.[1] The petition sought an issuance of an alternative writ of mandamus against the City, and following a hearing, for the peremptory issuance of a writ of mandamus directing the City to pay statutory interest due and owing pursuant to La. R.S. 38:2191. WCD alleged that the City failed to pay seven invoices (Nos. 23659-2.A.l.l, 23670-3.B.1.1, 23661-2.B.2.1, 23671-3.B.2.1, 23662-2.B.2.2, 23672-3.B.2.2, and 23685-4.B.2.2) "within forty-five days following receipt of a certified request" as mandated by La. R.S. 38:2191(B).[2] It further alleged that because of the City's failure to timely pay, the City is liable to WCD for the statutory interest in the amount of $201,200.06 and attorney's fees in an amount to be determined at a subsequent hearing.

---

[1] Later, the petition was amended to substitute Sarah McLaughlin Porteous as Acting Director of the Department of Public Works.

[2] Although the petition designates seven invoices as untimely paid, the invoices primarily at issue at trial were three invoices that were submitted in April for work performed during the month of February: Invoice Nos. 23659-2.A.l.l, 23661-2.B.2.1, and 23662-2.B.2.2. With regard to the remaining four invoices, which related to work performed in March and April of 2020, the City claimed that the invoices had to be processed in order and the inability to pay the February invoices caused a delay in the subsequent invoices.

2

The City filed an opposition to the writ of mandamus on October 7, 2022, claiming that the seven invoice payments were delayed for reasonable cause because WCD submitted bad, incorrect, and/or procedurally flawed invoices. The City also submitted the affidavit of Ingrid Raboteau ("Raboteau"), the invoice manager for the Department of Public Works, to establish that it had reasonable cause to delay payment and/or the invoices were paid within the forty-five day time limit. The City also alleged that the delays in payment to WCD were during the height of the COVID-19 pandemic and were caused by an act of God and/or force *majeure*.

The matter proceeded to trial on October 11, 2022 and October 25, 2022.[3] Numerous exhibits, which included the invoices, email correspondence, Raboteau's notes, and printouts from Quick Base, the City's invoice processing system, were introduced. Only two witnesses testified at trial: Wallace C. Drennan ("Drennan"), the owner of WCD, and Raboteau.

After the trial, each party submitted a post-trial memorandum, wherein they set forth separate charts delineating the invoices and their respective payments.

On December 27, 2022, the trial court issued its judgment and reasons for judgment, wherein the trial court ruled in favor of WCD with respect to Invoice No. 23661-2.B.2.1 and ordered the City to pay statutory interest. However, with respect to the remaining invoices, the trial court ruled in favor of the City. The judgment provided, in part:

---

[3] The matter was originally set for October 11, 2022. The parties reached several stipulations and Wallace C. Drennan ("Drennan"), WCD's owner, also provided some testimony. The record shows that the City's witness, Raboteau, was unavailable due to COVID-19 protocol. The trial court then reset the matter for October 25, 2022.

IT IS ORDERED ADJUDGED AND DECREED that Wallace C. Drennan, Inc.'s Alterative Writ is GRANTED in part and DENIED in part.

IT IS FURTHER, ORDERED, ADJUDGED AND DECREED that Wallace C. Drennan, Inc.'s Alterative Writ is GRANTED as it relates to Invoice No. 23661.2-B.2.1, with same being made peremptory, and that mandamus be issued, ordering Defendants to immediately pay statutory interest to Drennan totaling $4,639.80.

IT IS FURTHER, ORDERED, ADJUDGED AND DECREED that Wallace C. Drennan, Inc.'s Alterative Writ is further GRANTED and that Defendants be directed to pay costs of these proceedings, reasonable attorney's fees as permitted by [La. R.S.] 38:2191(B), judicial interest as provided by law, all in an amount to be determined in a subsequent hearing.

IT IS FURTHER, ORDERED, ADJUDGED AND DECREED that Wallace C. Drennan, Inc.'s Alterative Writ as it relates to all remaining invoices and other relief not specifically addressed herein is DENIED.

In its reasons for judgment, the trial court found that because All South "acted as the City's agent for purposes of receiving [WCD's] invoices, and because the City expressly directed that the invoices be delivered to All South", that the "forty-five day period for payment began when [WCD] delivered its invoices to All South." It further found that commencement of the forty-five day period "is not absolute and is subject to certain policies, procedures, verifications of accuracy, and other showings of reasonable cause by the public entity." The trial court also concluded that the City's policy that forty-five day period set forth in La. R.S. 38:2191(B) was extended "if the invoice was determined to be improper or incorrect, and thereafter resubmitted" and that the time delay for payment was "reset upon receipt of the correct invoice" reasonable. It further found that the City's position that "invoice processing must be completed in their proper order" also reasonable. The trial court also concluded while Raboteau's testimony

4

sometimes conflicted with notes made in the Quick Base system, it found her testimony was "honest, credible, and straightforward."

WCD timely appealed.

**APPLICABLE LAW AND DISCUSSION**

A trial court's ruling on a writ of mandamus is reviewed under an abuse of discretion standard. *See Chaisson v. State, Dep't of Health & Hosps. through Registrar of Vital Recs.*, 2017-0642, p. 5 (La. App. 4 Cir. 3/7/18), 239 So.3d 1074, 1078 (citing *Constr. Diva, L.L.C. v. New Orleans Aviation Bd.*, 2016-0566, p.13 (La. App. 4 Cir. 12/14/16), 206 So.3d 1029, 1037). "[F]indings of fact in a mandamus proceeding are subject to a manifest error standard of review." *Id*. (quoting *St. Bernard Port, Harbor & Terminal Dist. v. Guy Hopkins Constr. Co.,* 2016-0907, p.4 (La. App. 4 Cir. 4/5/17), 220 So.3d 6, 10).[4]

This Court in *Sewell v. Sewerage & Water Bd. of New Orleans,* 2019-0268, pp. 4-5 (La. App. 4 Cir. 1/20/21), 313 So.3d 333, 339, outlined the standard for manifest error as follows:

> A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id*. "Where there are two permissible views of the

---

[4] The Louisiana courts have applied a *de novo* standard of review that have involved "the interpretation of La. [R.S.] 38:2191 relative to a money judgment" "because the proper interpretation of a statute is necessarily a question on law." *See St. Bernard Port, Harbor & Terminal Dist. v. Guy Hopkins Constr. Co.*, 2016-0907, p. 4 (La. App. 4 Cir. 4/5/17), 220 So.3d 6, 10 (citing *Quality Design and Const., Inc. v. City of Gonzales*, 2013-0752, pp. 3-4 (La. App. 1 Cir. 3/11/14), 146 So.3d 567, 569–570, wherein the First Circuit interpreted a "Louisiana statute relative to the enforcement of a money judgment against a political subdivision of the state" and thus applied a *de novo* standard of review). However, this mandamus was an attempt to collect interest related to payment due under a contract and not a money judgment. Moreover, the parties agree that La. R.S. 38:2191 is the applicable statute and that a manifest error standard applies.

5

evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id*. Thus, "the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993).

La. R.S. 38:2191 governs payments for public contracts in Louisiana

and provides:

A. All public entities shall promptly pay all obligations including approved change orders, arising under public contracts when the obligations become due and payable under the contract. All progressive stage payments and final payments shall be paid when they respectively become due and payable under the contract.

B. (1) **Any public entity failing to make any progressive stage payment within forty-five days following receipt of a certified request for payment by the public entity without reasonable cause shall be liable for reasonable attorney fees and interest charged at one-half percent accumulated daily, not to exceed fifteen percent**. Any public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney fees and interest charged at one-half percent accumulated daily, not to exceed fifteen percent.

(2) Any interest received by the contractor pursuant to Paragraph (1) of this Subsection, shall be disbursed on a prorated basis among the contractor and subcontractors, each receiving a prorated portion based on the principal amount due within ten business days of receipt of the interest.

C. The provisions of this Section shall not be subject to waiver by contract.

D. Any public entity failing to make any progressive stage payments arbitrarily or without reasonable cause, or any final payment when due as provided in this Section, shall be subject to mandamus to compel the payment of the sums due under the contract up to the amount of the appropriation made for the award and execution of the contract, including any authorized change orders.

(emphasis added).

"Mandamus relief under La. R.S. 38:2191 is available only when there is no

discretion left to the public entity as to whether payment is due and payable under

6

the terms of the contract." *Stevens Constr. & Design, L.L.C. v. St. Tammany Fire Prot. Dist. No. 1*, 2019-0955, p. 11, (La. App. 1 Cir. 7/8/20), 308 So.3d 724, 732, (citing *Wallace C. Drennan, Inc. v. St. Charles Parish*, 2016-177, p. 11 (La. App. 5 Cir. 9/22/16), 202 So.3d 535, 544). "'[R]easonable cause' for nonpayment exists when the terms of the contract do not mandate payment under certain circumstances of the particular case." *Id*. (quoting *Wallace C. Drennan, Inc.*, 2016-177, p. 11, 202 So.3d at 544).

The Contract at issue provided that payments to WCD shall be made in accordance with law,[5] and thus the City was required to pay the invoices within forty-five days absent reasonable cause for delay. If the City lacked reasonable cause to delay payment, it is liable for attorney's fees and interest. *See* La. R.S. 38:2191(B)(1).

The parties do not dispute that a writ of mandamus was the appropriate method to obtain interest for alleged untimely payments. The parties also agree that the payment applications were progressive stage payments and that WCD was ultimately paid for the work performed. The issue in the appeal is whether the City had reasonable cause to delay payment and thus whether WCD is entitled to interest under La. R.S. 38:2191(B)(1).

In its brief, WCD sets forth the following assignments of error:

> (1) The trial court manifestly erred in denying statutory interest for Invoice 23659-2[.]A.1.1 and Invoice 23662-2.B.2.2, presumably based on an unsupported and unarticulated finding that the City had reasonable cause for its failure to pay those invoices within 45 days after they were received by the City's engineer.

---

[5] Section C138.01 of the City's General Specifications for Street Paving, which was incorporated into the Contract, provided in part, "[p]ayment for the property owner's portion of the cost of the work, and the City's portion of the cost of the work, if any, shall be made in accordance with the provisions of the law."

(2) The trial court manifestly erred in refusing to award interest for Invoice 23672-3.B.2.2 and Invoice 23685-4.B.2.2, because those two invoices were subsequent invoices arising from the same division of the project as Invoice 23662-2.B.2.2 and, as set forth above in Assignment of Error Number 1, the trial court manifestly erred in rejecting Drennan's claim for statutory interest as to Invoice 23662-2.B.2.2.

(3) The trial court manifestly erred in failing to award statutory interest for Invoice 23671-3.B.2.1, because that invoice was a subsequent invoice arising from the same division of the project as Invoice 23661-2.B.2.1 and the trial court correctly found that the City failed to show reasonable cause for its delay in paying Invoice 23661-2[.]B.2.1.

(4) The trial court manifestly erred in rejecting Drennan's claim for statutory interest for Invoice 23670-3.B.1.1, because the prior invoice for this division of the project was paid timely, and the City raised no independent grounds for its failure to pay Invoice 23670-3.B.1.1.

(1) Invoice No. 23659-2.A.1.1 and Invoice No. 23662-2.B.2.2

WCD notes that the trial court in its reasons for judgment found that the forty-five day period for payment began when WCD delivered its invoices to All South. WCD argues that because it delivered Invoice Nos. 23659-2-A.1.1 and 23662-2.B.2.2 to All South on April 16, 2020 and payment was due on or before May 31, 2020, but it was not paid until July 7, 2020 and July 24, 2020, a total of thirty-seven days late for Invoice No. 23659-2-A.1.1 and fifty-four days later for Invoice No. 23662-2.B.2.2.[6]

According to the City, Invoice Nos. 23659-2.A.1.1 and 23662-2.B.2.2 were both rejected by the City as "illegible." The City documents also indicate

_____

[6] In its appellee brief, the City does not expressly address WCD's assignment of errors nor the specific invoices at issue. The City merely argued the trial court did not err in finding that the City's delay in payment as to six invoices was reasonable under the circumstances.

8

Invoice No. 23662-2.B.2.2 had the wrong purchase order or bid item number.

WCD argues, however, that the evidence at trial ultimately shows the delay in

payment was due to the fault of the City. We find WCD's argument persuasive.

The following evidence and testimony was adduced at trial regarding

Invoice No. 23659-2.A.1.1:

- On April 16, 2020, WCD delivered four invoices, including Invoice No. 23659-2-A.1.1 to All South. At some point thereafter, the invoices were also uploaded onto BRASS.

- On April 24, 2020, Drennan's assistant, Teresa Deemer ("Deemer"), emailed the City regarding issues with invoices in BRASS. The City responded and said some of the invoices in BRASS were "not legible (clear), incomplete, or not in the system" and instructed WCD to email the invoices.

- On April 27, 2020, Deemer emailed several City employees, including Raboteau, the invoices.

- On April 28, 2020, the City acknowledged the receipt of the email and that Invoice No. 23659-2.A.1.1 was "attached to the correct [purchase order]" but had the wrong invoice amount. The email, however, stated that the error with Invoice No. 23659-2.A.1.1 was corrected and that "you don't need to do anything to that one."

- On May 22, 2020, Cortlin Johnson ("Johnson"), the Project Delivery Unit ("PDU") invoice processor emailed Ahmed Hamed ("Hamed), a project manager for the City for a "clear copy" of Invoice No. 23659-2.A.1.1. The City maintains that the invoice was rejected at this point.

  o Hamed then forwarded the email to Calvin Ford ("Ford"), another City project manager and Ford emailed Clark Capone, an employee of All South, for "clear signed copy."

- On May 27, 2020, All South sent a copy of Invoice No. 23659-2.A.1.1, to Ford, Ahmed, and Raboteau and the clear copy of the invoice was then forwarded to Johnson.

- Raboteau testified that according to her notes and the Quick Base system, on May 29, 2020, Johnson noticed that in addition to the invoice being illegible, there was an "invoice error" as to Invoice No. 23659-2.A.1.1. Raboteau stated that Quick Base indicated that Johnson subsequently "followed up with [project manager]."

- Raboteau testified that Invoice No. 23659-2-A.1.1 was deemed resubmitted on June 30, 2020.

9

- On July 2, 2020, the City issued payment and on July 7, 2020, WCD received the check for Invoice No. 23659-2.A.1.1.

The record does show that Invoice No. 23659-2.A.1.1 was delivered to All South on April 16, 2020. However, the email correspondence and testimony shows that the City and WCD had communicated regarding invoice errors in BRASS and WCD resubmitted the invoice on April 27, 2020. Raboteau testified at trial that when there is a problem with the invoice,[7] the City notifies the contractor to rectify the issue and that the resubmittal of the invoice resets the "clock" on forty-five day time limit to pay the invoice. She explained as follows:

> The procedure is the [project manager of the City] is to notify [WCD] and let them know that the copies are unclear, that we need a clearer copy to move forward with the invoice. But if at any point in time, once the invoice is rejected because at that time, when they emailed the [project manager], the invoice is rejected. The clock starts over once something is rejected meaning we receive the invoice, but now, the clock starts over for the vendor because we can't do the 45 days. Like the clock had started. The 45 days stop until we receive a clear copy or a revised invoice.

As such, according to the City's policy, the City had forty-five days from April 27, 2020, the date of resubmission, or until June 11, 2020 to pay Invoice No. 23659-2.A.1.1.[8]

The Quick Base system indicated that there were problems with Invoice No. 23659-2.A.1.1 subsequent to when WCD emailed the City in April 2020. However, the record provides that WCD was not notified of these invoice errors nor were the errors attributable to WCD. Drennan testified at trial that WCD had no knowledge of the events that followed the April 28, 2020 emails, including the

---

[7] Raboteau testified if the City accepted improper invoices there was risk that it would not be reimbursed by FEMA.

[8] As noted above, the trial court determined that the City's policy of resetting the forty-five "payment delay" was "not unreasonable."

May 22, 2020 "rejection" or that All South provided another copy of the invoice to the City. Additionally, while Raboteau testified that she often communicated with contractors, including WCD, about invoice issues, there is no documentation showing that City had contacted WCD about Invoice No. 23659-2.A.1.1 beyond the April 2020 correspondence. Moreover, although the trial court found Raboteau to be credible, it also acknowledged at trial that her testimony was based on her review of the Quick Base system and not based on personal knowledge. The trial court stated in part:

> [Raboteau] has provided everything that is contained within that -- everything from that computer program. The Court is aware that this is not personal information. The Court's well aware of it. To the extent she has created an affidavit -- the Court takes note of her testimony today that her testimony today is based on the information from that computer program [Quick Base] -- which I can only then assume that the affidavit is based on that as well.

Furthermore, after WCD emailed the City the invoices, on April 28, 2020, the City advised WCD that no further action was needed as to Invoice No. 23659-2.A.1.1. Subsequent thereto, the record shows that the City only contacted other City employees and its engineer, All South, for a legible copy of the invoice and thus any error with respect to Invoice No. 23659-2.A.1.1 after April 2020 was resolved without any involvement of WCD. The evidence thus suggests that the delay in payment was due to the City's internal processing of the invoices.

Reviewing the record in its entirety, we find that that evidence shows the delays subsequent to April 27, 2020 were due to the City's internal problems and not due to the fault of WCD. Thus, the trial court did not have a sufficient factual basis to find that the City had reasonable cause to delay payment to WCD. Accordingly, we find that the trial court was manifestly erroneous in denying statutory interest with regard to Invoice No. 23659-2.A.1.1.

11

With regard to Invoice No. 23662-2.B.2.2, the trial court likewise erred in declining to award interest under La. R.S. 38:2191(B)(1). As noted above, the City claimed this invoice was not paid timely because of an incorrect bid item number and because it was illegible.

The circumstances regarding the initial delivery of the payment application of Invoice No. 23662-2.B.2.2 is the same as Invoice No. 23659-2.A.1.1. The record provides that Invoice No. 23662-2.B.2.2, along with other invoices, was delivered to All South on April 16, 2020 and was uploaded into BRASS. After Deemer contacted the City about issues in BRASS, she emailed the City another copy of the invoices on April 27, 2020. The City acknowledged the receipt of the email the following day. However, the City's response regarding Invoice No. 23662-2.B.2.2 and the subsequent events differ from those regarding Invoice No. 23659-2.A.1.1:

- After receiving Deemer's email, on April 28, 2020, the City communicated to WCD that three of the invoices, which included Invoice No. 23662-2.B.2.2, "were attached to the wrong [purchase order]." The City indicated it deleted those invoices and instructed WCD to re-upload them into BRASS.

- On May 22, 2020, the City noted that there was an incorrect bid item number on the purchase order.[9] The record provides that bid item number that was contained in the template was C742(58) but that it should have been C742(x4).

- On June 2, 2020, the City requested that WCD resubmit Invoice No. 23662-2.B.2.2. The same date, WCD resubmitted the invoice with the appropriate bid item number, i.e., bid item number 58 on the invoice was changed to x4.

  o There is a disparity in the testimony as to which party was responsible for the bid item numbers contained in the template.

    ▪ Drennan testified that the City provided the template and the City thus provided the work numbers. He stated: "So when the job starts from the [City], [] sends an Excel template that we are required to use to keep track of our quantities and to print invoices. It's

---

[9] The Quick Base system stated that item "C742(58)(C)(C) was not on the PO." However, the testimony and invoice documents provide that 58 was the wrong number and x4 was the correct item number.

completely filled in — the item numbers, the quantities, everything but the current quantity and previous amounts. It's a blank slate."

o With regard to Invoice No. 23662-2.B.2.2, Drennan explained:

So the last two items on page 24, after the C742, in parentheses, is (58)[] while this job was bidding, the City of New Orleans c[a]me out with an addendum -- changed the 57s to x3s and 58 to x4. It got changed in the template before we got it, but someone at the -- but it did not get changed in the last two items. The items are the exact same, and the unit prices are the exact same. And in addition, I think they paid one of these the month before with the same issue.

Drennan thus stated that the last items of the template were "not updated for their bid item number to change 58 to x4."

▪ Raboteau, however, stated that WCD had "entered it [the bid item number or project number in the invoice] wrong" and that "they [WCD] needed to change it." Conversely, she also stated that the template containing bid item numbers "comes from the City."

- According to the City's documents after WCD resent Invoice No. 23662-2.B.2.2, it was rejected on June 30, 2020 "due to an unclear copy."

- Raboteau testified that the City received a clear copy July 21, 2020.

- Raboteau stated the City issued payment on July 21, 2020 and on July 24, 2020, WCD received payment.

WCD argues that the problems with Invoice No. 23662-2.B.2.2 was caused by an error in the invoice template created by the City and thus the City lacked reasonable cause to delay payment.[10] WCD also claims that even after resubmitting Invoice No. 23662-2.B.2.2 on June 2, 2020, it took "another 52 days… to pay that invoice after the issue was resolved."

As noted above, there was conflicting statements regarding the City's invoice template. Drennan testified that the City had created the template that

---

[10] WCD also correctly notes that it had submitted this same template for an invoice in January that had 58 as the bid item number instead of x4, but that the City nevertheless paid that invoice.

contained the wrong bid item number, whereas Raboteau stated that bid item number error contained in Invoice No. 23662-2.B.2.2 was completed by WCD.

Evaluations of credibility are for the trier of fact and should not be disturbed on appeal where conflict exists in the testimony. *See State ex rel. Orleans Par. Crim. Dist. Ct. v. City of New Orleans ex rel. Landrieu*, 2015-1089, p. 3 (La. App. 4 Cir. 3/16/16), 192 So.3d 127, 129 (stating that "reasonable evaluations of credibility" should not be disturbed on review "where conflict exists in the testimony" and "where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong"). Nevertheless, it is undisputed that WCD resubmitted the template for Invoice No. 23662-2.B.2.2 with the correct bid item number on June 2, 2020. Therefore, regardless of discrepancy in the testimony as to who bore responsibility for completing the template, the City had forty-five days after June 2, 2020, or until July 17, 2020, to pay Invoice No. 23662-2.B.2.2.

According to Raboteau, after WCD submitted an invoice with the appropriate bid item number, the invoice was deemed unclear on June 30, 2020 and that the City did not receive a legible copy until July 21, 2020. However, there is no evidence that WCD was contacted nor had knowledge that Invoice No. 23662-2.B.2.2 was deemed illegible after it was resubmitted on June 2, 2020. There is likewise no indication that there were any errors after the bid item numbers on Invoice No. 23662-2.B.2.2 were corrected on June 2, 2020, was caused by WCD.

We find that there was no reasonable cause to delay payment after the bid item number was corrected and where the subsequent invoice error was not attributable to WCD. WCD resubmitted the corrected Invoice No. 23662-2.B.2.2

on June 2, 2020 and the City did not issue payment until July 21, 2020. Because the City failed to pay WCD within the forty-five day time period, the trial court was manifestly erroneous in failing to award statutory interest regarding Invoice No. 23662-2.B.2.2.

(2) Invoice No. 23672-3.B.2.2 and Invoice No. 23685-4.B.2.2

According to the City, Invoice Nos. 23672-3.B.2.2 and 23685-4.B.2.2 were not paid because the invoices are required to be processed in order and the delay in paying the previous invoice, Invoice No. 23662-2.B.2.2, created the delay in paying the subsequent invoices.

WCD claims Invoice No. 23672-3.B.2.2 was submitted on May 6, 2020, and Invoice No. 23685-4.B.2.2 was submitted on June 8, 2020. The documents and the testimony from the City, on the other hand, indicate that Invoice No. 23672-3.B.2.2 was submitted on May 14, 2020 and Invoice No. 23685-4.B.2.2 was submitted on June 16, 2020. Nevertheless, the record shows that the City issued payment for both invoices on August 13, 2020 and WCD received payment on August 17, 2020.

WCD argues that because the City did not have reasonable cause to delay payment of Invoice No. 23662-2.B.2.2, it cannot justify its subsequent delays in paying Invoice Nos. 23672-3.B.2.2 and 23685-4.B.2.2. We agree.

As noted above, Raboteau testified when that there was an issue with an invoice that required correcting, the resubmittal of the invoice reset the forty-five day time period to submit payment. With regard to Invoice Nos. 23672-3.B.2.2 and 23685-4.B.2.2, she provided the following explanation:

> [Raboteau] A. The next invoice is — and remember this, they — like I said before, they can send multiple invoices one after another. So on the next two invoices that I'm going to talk about -- which is 3B.2.2

15

and 4B.2.2 -- we can't move forward, again, with another invoice until the previous invoice is clear, you know, cleared up. So for this one [3.B.2.2], we received the invoice 5/14/20. The previous invoice was rejected. So on 5/18, they said that.

[City Attorney, Bernard Blair] Q. So anytime you have a problem with an invoice and a contractor submits something thereafter, it's on hold until —

A. Correct. So then all the issues was solved on 2B.2.2 on 7/21. So on 7/30, it's like a resubmittal of the next invoice.

Q. And when you say the issues resolved which means -- how would the issues be resolved?

A. if whatever the issues are, if it's the [purchase order] number that's incorrect in BRASS —

Q. But I mean between what parties?

A. Between [WCD] and the City of New Orleans or also --

. . . .

A. So we submitted the invoice on 7/31. On 8/11, it was released. And on 8/13/20, we paid the invoice. So that particular invoice took us 13 days, again, to pay it. And then the last invoice is 4b -

. . . .

So the next -- the last invoice is 4B.2.2.

[] Q. And what happened in the case of that invoice?

A. So received the invoice on 6/16/20. On 6/22, we sent it to PDU. On 7/21, the previous invoice was rejected. So that was when the 3B.2.2 — even though we received it, we still have to put in our system each step so we couldn't move forward with this one.

Q. So one invoice kind of messed up that whole system?

A. Yes. So then when we released the invoice on 8/11 for 3B.2.2, we also released the invoice for 3B.2.2 even though we received it previously at a[n] earlier date. And then on 8/13/20, we paid this invoice as well. So this invoice was 13 days also.

Notwithstanding the City's policy of resolving earlier invoices before addressing the payment of subsequent invoices; because we found that the trial court was manifestly erroneous in determining that the City had reasonable cause

to delay payment for Invoice No. 23662-2.B.2.2, we likewise find that the trial court erred in finding that the City was justified in delaying payment for Invoice Nos. 23672-3.B.2.2 and 23685-4.B.2.2. As such, WCD is entitled to interest for the City's failure to pay Invoice No. 23672-3.B.2.2 and Invoice No. 23685-4.B.2.2 within forty-five days.

(3) Invoice No. 23671-3.B.2.1

WCD notes that the trial court ruled in favor of WCD with respect to Invoice No. 23661-2.B.2.1 and thus found the City did not have reasonable cause to delay payment thereto. WCD therefore argues that it was error for the trial court to reject its claim for statutory interest with respect to Invoice No. 23671-3.B.2.1, the subsequent invoice, as there was no justification for delay payment as to Invoice No. 23661-2.B.2.1, the previous invoice.

The records provided by WCD indicates that Invoice No. 23671-3.B.2.1 was submitted on May 6, 2020. According to the City's Quick Base system and Raboteau, Invoice No. 23671-3.B.2.1 was submitted to the City on May 18, 2020 and paid on August 13, 2020. Raboteau testified that this invoice was rejected on July 31, 2020, because of the error with the prior invoice, i.e. Invoice No. 23661-2.B.2.1. As noted by WCD, the trial court ultimately ruled that the City did not have reasonable cause to delay the payment of Invoice No. 23661-2.B.2.1. [11]

---

[11] The trial court's judgment and reasons, provided:

It is uncontroverted that Invoice No. 23661.2-B.2.1 was initially submitted on 4/16/2020, resubmitted with a corrected invoice on 5/22/2020, and paid on 7/21/2020; therein resulting in final payment being issued 61 days after submission, or 16 days past the 45 day time delay. The City argues that any delay is due in part to "force majeure" (i.e. the initial pandemic stay at home orders issued by the appropriate City and State authorities). Drennan asserts that such defense is misplaced insofar as Drennan (like other contractors) were obligated to continue their work through this time period. Drennan further argues that such delay is misplaced in that at least two (2) other invoices were submitted after

17

Like with the previous assignment of error, because the City failed to establish reasonable cause to delay payment to Invoice No. 23661-2.B.2.1, it cannot justify its untimely payment of Invoice No. 23671-3.B.2.1 based on the City's policy of processing invoices in order. As such, the trial court erred in declining to award statutory interest for Invoice No. 23671-3.B.2.1.

(4) Invoice 23670-3.B.1.1

Lastly, WCD claims the trial court erred in declining to award statutory interest with regard to Invoice No. 23670-3.B.1.1. It argues that the City maintained that it had delayed payment because this invoice was "out of order." WCD, however, claims that the City's contention is incorrect because the record shows that the prior invoice, Invoice No. 23670-2.B.1.1, was paid timely and thus the City did not have reason to delay this payment.

WCD is correct – the record reflects that Invoice No. 23670-2.B.1.1 was paid timely. The testimony and trial exhibits show that Invoice No. 23670-2.B.1.1 was received by All South on April 16, 2020 and was paid on May 29, 2020.

At trial, however, Raboteau stated that the Quick Base system indicated that Invoice No. 23670-3.B.1.1 was rejected on May 14, 2020 because "Cortlin Johnson stated that the previous invoice was rejected."[12] The City documents show that the invoice was resubmitted to the PDU team on July 31, 2020 and that a check was issued August 13, 2020. Raboteau conceded that she could not explain

---

Invoice No. 23661.2-B.2.1 and paid prior to 7/21/2020. As such, this Court agrees with Drennan's position as it relates to Invoice No. 23661.2-B.2.1.

[12] Earlier in the trial, Raboteau testified that Invoice No. 23670-3.B.1.1 was rejected because it was unclear, however, later she stated that this testimony was wrong and that it was not paid because the previous invoice had issues. With regard to Invoice No. 23670-3.B.1.1, the City documents show "5/14/2020 Previous invoice rejected;" "7/31/2020 I resubmitted to PDU" and on 8/12/20 the payment was "released."

why Invoice No. 23670-3.B.1.1 was not paid until August "other than referring to what Cortlin Johnson put in Quick Base." However, because the evidence shows that the prior invoice, Invoice No. 23670-2.B.1.1, was in fact paid timely, the City cannot attribute its delay in paying the subsequent invoice to its policy of processing invoices in order. As such, we find that the trial court was manifestly erroneous in failing to award statutory interest as to Invoice No. 23670-3.B.1.1, as there was no reasonable cause to delay payment thereof.

**CONCLUSION**

Based on the foregoing, the City lacked reasonable cause to delay payment with respect to Invoice Nos. 23659-2.A.1.1, 23662-2.B.2.2, 23672-3.B.2.2, 23685-4.B.2.2, 23671-3.B.2.1, and 23670-3.B.1.1. The trial court's finding to the contrary was unreasonable in light of the record. Accordingly, the trial court's judgment denying WCD's alternative writ of mandamus regarding the aforementioned invoices is reversed and WCD is entitled to statutory interest thereon. The trial court's judgment granting the writ and ordering statutory interest as to Invoice No. 23661.2-B.2.1 is affirmed.[13] Accordingly, the trial court's December 27, 2022 judgment on WCD's writ of mandamus is reversed in part and affirmed in part. Additionally, the matter is remanded to the trial court for further proceedings.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED**

---

[13] The City did not file an appeal with respect to the trial court's granting of the writ of mandamus and ordering it to pay statutory interest with respect to Invoice No. 23661.2-B.2.1. We find no error in the trial court's ruling in that regard. *See* n. 11.